ADRIAN W. ARMOR et al., Appellants, v. JOSEPH FREY.

Division Two, December 9, 1913.

1. **APPEAL: Point Decided on Former Appeal.** A point decided on a prior appeal is not for consideration on a second appeal of the same case, there being no change in the facts bearing on that issue.

2. **EXECUTORS: Conveyance of Lands.** Where two executors have qualified, a conveyance of realty by one of them without the concurrence of the other is ineffective.

3. **————: ————: Official Act: Showing of Authority.** An executor in making a sale of realty under a power in the will acts officially, and in order that a conveyance by him may be effective his authority must appear on the deed with such certainty that the act done shall visibly be warranted by the power conferred.

4. **PARTNERSHIP: Real Estate: Death of Partner.** After the death of a member of a partnership owning real estate the share of the deceased partner descends, after the payment of partnership debts and the winding up, to his heirs or devisees.

5. **————: ————: ————: Conveyance by Survivor.** Where creditors made no claim to wild land owned by a partnership, and the surviving partner, after taking deeds from the executor

and the heirs of his deceased partner (that from the executor proving void), conveyed to third parties, the conveyance of such surviving partner is *held* to have been made as sole owner and not as a partner by way of winding up.

6. **ESTOPPEL: Remaindermen: Acts of Life Tenants.** Remaindermen are not estopped from claiming their interest because of an attempted sale of the fee by the life tenants (in this case the parents of the remainderman) and a receipt of the proceeds by such life tenants.

7. **ESTATE IN REMAINDER: Limitations.** Where land is limited by will to the children of the testator for life with remainder to their heirs and a provision that if any child of the testator shall die without issue his share shall be divided among the survivors, the share of any child so dying without issue does not vest in possession in the survivors until such death, and the Statute of Limitations does not begin to run until that time.

8. **COVENANTS OF WARRANTY: Liability of Heir: Advancements.** An heir is not liable on his ancestor's covenant of warranty by reason of advancements.

9. **———: Liability of Devisee or Legatee.** At common law a devisee or legatee was not liable out of the gift by reason of the testator's liability on a covenant of warranty.

10. **COMMON LAW STATE: Presumptions.** Georgia is one of the States originally under the common law, and in the absence of any showing of a statute of that State, it will be presumed that the common law remains in force there.

11. **COVENANTS OF WARRANTY: Liability of. Devisee or Legatee: Residence in Georgia: Conveyance of Missouri Land.** A resident of Georgia who is given property in that State by the will of her father, who lived there and whose estate was there administered, is not liable out of the Georgia gifts on covenants of warranty made by her father in the conveyance of lands lying in Missouri.

12. **———: Liability of Appointee Under a Power.** An appointee under a power takes from the donor of the power, not from the donee; and therefore, where a testator devised lands to his children for life, with a power of appointment by will in favor of their children, a son to whom property is so appointed by his father, a child of the testator, is not liable on the father's covenant of warranty made in the conveyance of other lands.

13. **———: Liability of Wife Who Joins Her Husband in Conveyance of His Life Estate.** A wife who joins with her husband in the execution of a power of attorney to convey

lands in which the husband had a life estate, the power clearly showing that she had no interest other than as wife, is not liable on the covenants of warranty in the deed made in execution of the power, out of a remainder in the same lands which vested in her on the death of her husband.

14. **ADVERSE POSSESSION: Life Tenant.** A life tenant cannot, by his acts or declarations, set up pretensions to an absolute estate, so as to make his possession adverse to the reversioner or remainderman, those persons having no right of action until the particular estate has determined.

15. **SUIT TO QUIET TITLE: Remainderman: Particular Estate Pending: Limitations.** A remainderman upon a pending life estate is not barred by limitations from bringing a suit to quiet title because ten or more years have elapsed since his right to bring such a suit first accrued or he was relieved of disability, even though the life tenant had attempted to convey, and his grantee claimed, the fee.

16. **————: Requisites: Limitations.** The Missouri statute governing the action to ascertain interest or quiet title contemplates two or more adverse claimants and gives to each the right of action against the other regardless of the possession of the property. They may each allow ten years to elapse after knowledge of the other's adverse claim without proceeding to quiet title. The statute will not, for such failure, bar the rights of both, and its language does not give preference to one over the other. It may develop in the course of the proceedings that some right claimed or some affirmative relief sought by the parties is barred by limitations, but the mere failure for ten years to sue under the statute after the right has accrued does not bar the right so to proceed thereafter.

17. **PARTITION: Allowance for Improvements.** Upon partition in equity a tenant in common of real estate is entitled to an allowance for improvements made honestly and not for the purpose of embarrassing his cotenants, encumbering their estate or hindering partition.

18. **————: ————: Rents: Evidence.** Where the interests of plaintiffs, who are entitled to judgment in ejectment, are subject to the defendant's claim for an allowance for improvements, plaintiffs are entitled only to their proportion of what the land would rent for without the improvements, and there being no evidence as to that no rents can be adjudged to them.

19. **————: Tenancy in Common: Adverse Possession.** A disseizure on actual adverse possession destroys the unity of possession among tenants in common and takes away the right to partition until the title is determined by an action of ejectment.

253 Mo. 29

20. **SUIT TO QUIET TITLE: Relying on Legal Title: No Partition.** A plaintiff in a suit to establish an equitable interest in land may in the same suit have partition, but such is not the case when he counts solely on his legal title.

Appeal from Barton Circuit Court.—*Hon. F. C. Johnston*, Judge.

REVERSED AND REMANDED (*with directions*).

*James G. Park, O. L. Cravens, H. G. Geyer* and *H. W. Timmonds* for appellants.

(1) The share of the deceased partner passes to his heirs or devisees. 3 Kerr Real Prop., 1964, sec. 1999; Tiedeman Real Prop. (1 Ed.), p. 164, sec. 246; 1 Wash. Real Prop., 573, 576; 30 Cyc. 434; Keck v. Fisher, 58 Mo. 532; Young v. Thrasher, 115 Mo. 222; Holmes v. McGee, 27 Mo. 597; Easton v. Courtwright, 84 Mo. 27; Matthews v. Hunter, 67 Mo. 293; Dyer v. Morse, 28 L. R. A. 89 and notes; Baker v. Middlebrooks, 81 Ga. 494; Printu v. Turner, 65 Ga. 77; Bank v. Cody, 93 Ga. 151. (c) But there is not even a pretended sale by the surviving partner as such for any purpose. It is true that in the earlier deeds, inclusive of the one in the Kearney case, Davis joined with the Moore children so as to convey his half interest and later he bought the bulk of the land from the Moore children, taking deed from them under agreement with them to leave unpaid any claims against the land to be paid later, half and half. Thereafter he held the land claiming absolute ownership and sold same at will in small tracts throughout a period of twenty-five years or more and owned some of it at his death. The purchase money of any deed made by or to Davis never went to pay any partnership debt but went to the life tenant grantors through the medium of the court of ordinary. The deeds actually made purport to convey the interest of grantors and accomplish this purpose. Where this is the case they cannot be

construed as being made in an entirely different capacity. Foote v. Sanders, 72 Mo. 621; Bone v. Tyrrell, 113 Mo. 185. (2) Statute of Limitations. (a) The general rule is that the Statute of Limitations does not run or begin to run against the remainderman during the existence of a life estate. So long as the life tenant or his grantee is in possession, such possession is rightful as against the remainderman and there is and can be no adverse possession against such remainderman. In such cases the statute does not begin to run against such remainderman until the death of the life tenant and in such case it makes no difference that the life tenant or his grantee asserts absolute title or holds under deed or other conveyance purporting to give an absolute title. The authorities to this effect are so numerous as to scarcely need citation. Hall v. French, 165 Mo. 430; Reed v. Lowe, 163 Mo. 535; Melton v. Fitch, 125 Mo. 290; Null v. Howell, 111 Mo. 273; Colvin v. Hauenstein, 110 Mo. 575; Keith v. Keith, 80 Mo. 125; Bradley v. Railroad, 91 Mo. 498; Manning v. Coal Co., 181 Mo. 374; Graham v. Ketchum, 192 Mo. 24. (b) The Statute of Limitations as to lands is based essentially on adverse possession and where the possession is not adverse the statute does not begin to run however long the possession continues. No one is barred until the statutory period after his right of possession accrues. 1 Cyc. 1026, 1056-7; Bradley v. Goff, 243 Mo. 95; Dyer v. Whittler, 89 Mo. 91; Johnson v. Prewitt, 32 Mo. 558; Hunnewell v. Burchett, 152 Mo. 614; Wilson v. Frost, 186 Mo. 317; Smith v. Smith, 201 Mo. 544; McMurtry v. Fairley, 194 Mo. 512; Glasgow v. Foundry Co., 229 Mo. 594; Charles v. Pickens, 214 Mo. 215; De Hatre v. Edmonds, 200 Mo. 273; Hall v. French, 165 Mo. 439. "The right limited is the present existing right of action or of entry." . . . The question of the right of action depends on the fact and right of seizin or possession, whoever is entitled to the possession *ex necessitate* is entitled to the right of action.

Dyer v. Whittler, 89 Mo. 86; Johns v. Fenton, 88 Mo. 64; R. S. 1909, sec. 1881. (c) The possession of a life tenant or his assignee is not and cannot be made adverse to the remainderman by any occupancy, claim, assertion of full title, or by any act or deed on the part of such life tenant or his assigns. Hall v. French, 165 Mo. 438; Roberts v. Thomason, 174 Mo. 386; Melton v. Fitch, 125 Mo. 281; Fischer v. Siekmann, 125 Mo. 178; 1 Cyc. 1056; 1 Kerr Real Prop., 575; 1 Ency. Law (2 Ed.), 808; Tiedeman, Real Prop., sec. 65; Salmons v. Davis, 29 Mo. 181; Keith v. Keith, 80 Mo. 127; Pratt v. Canfield, 67 Mo. 53; Sutton v. Casseleggi, 77 Mo. 405; Charles v. Pickens, 214 Mo. 215. (d) It makes no difference as to starting the statute that the remainderman have a right to bring a suit in some form or other to determine or terminate the right of the life tenant to such possession, as a suit to assign dower terminates the right to quarantine. Westmeyer v. Gallenkamp, 154 Mo. 36; Osborn v. Weldon, 146 Mo. 185; Fisher v. Siekmann, 125 Mo. 175; Brown v. Moore, 74 Mo. 633; Graham v. Stafford, 171 Mo. 699; Carey v. West, 139 Mo. 176. Or a suit in equity to vest title in plaintiff. Sherwood v. Baker, 105 Mo. 477. Or a suit by a vendor against a vendee to terminate that relation. Manning v. Coal Co., 181 Mo. 376; Long v. Stockyards Co., 107 Mo. 303. Or in partition to determine the rights of conflicting claimants to the fee subject to a life estate. Thomas v. Black, 113 Mo. 70; 32 Cyc. 1337; Keyes v. Ketrick, 56 Atl. (R. I.) 770; Alley v. Alley, 91 S. W. (Ky.) 291. While plaintiffs could in all these cases have brought and maintained at an earlier period the very suit they did bring and maintain, the court held that so long as there was no adverse possession, as during the possession of the life tenants and his assigns, the statute did not run. (e) All this is because the Statute of Limitations as applied to land is essentially different than as applied to personal actions. In the latter case it acts on and bars

the action only, while in land cases it extinguishes the title and vests it in another absolutely. Sherwood v. Baker, 105 Mo. 477; 25 Cyc. 997; Gardner v. Terry, 99 Mo. 523; Franklin v. Cummingham, 187 Mo. 196; Ridgeway. v. Holliday, 59 Mo. 453; Harper v. Morse, 114 Mo. 317; Allen v. Mansfield, 108 Mo. 343. The remark made in Haarstick v. Gabriel, 200 Mo. 237, that a suit to quiet title would be governed by the ten-year Statute of Limitations was said in a case involving wild land not in possession of anyone and had no reference to land occupied by a life tenant whose occupancy could not be adverse to the remaindermen. The case of Gray v. Wood, 234 Mo. 291, was brought more than ten years after the enactment of our statute to determine title but the possession was that of a life tenant. (3) Defendants have been the owners of an undivided half or more in fee and the owners of the life estates in the other half. Life tenants cannot charge and recover from remaindermen for improvements placed thereon during the life estate. This is now settled in this State by Building & Loan Assn. v. Eveler, 237 Mo. 679. Frederick v. Frederick, 13 L. R. A. (N. S.) 514 and note; 16 Cyc. 631, and cases cited; Schorr v. Carter, 120 Mo. 409; Schaffner v. Schilling, 6 Mo. App. 42; Curtis v. Fowler, 33 N. W. (Mich.) 804; 15 Cyc. 225, note 71. (4) Liability of plaintiffs on ancestor's warranty. (a) The deed to the Barton county land in the Cooper and Jester cases, being a conveyance of "the right, title and interest" of grantors and containing words of quitclaim and a special warranty against claims under themselves only, is a quit claim only and neither binds anybody by warranty or passes after acquired title. 8 Am. & Eng. Ency. Law (2 Ed.), 71; 11 Cyc. 1059; 1 Jones, Real Prop. in Conveyancing, sec. 992, p. 779; Tiedeman, Real Prop., sec. 728, p. 553; Butcher v. Rogers, 60 Mo. 138; Valle v. Clemens, 18 Mo. 486; Bogy v. Shoab, 13 Mo. 366; Gibson v. Choteau, 39 Mo. 536; Moore v. Harris, 91 Mo. 616; Ford v.

Unity Church, 120 Mo. 498; Brawford v. Wolfe, 103 Mo. 391; Wilson v. Fisher, 172 Mo. 10; Stoepler v. Silberg, 220 Mo. 258; Waldermeyer v. Loebig, 222 Mo. 450; McDonough v. Martin, 88 Ga. 675, 18 L. R. A. 343; White v. Stewart, 62 S. E. (Ga.) 590; McNear v. Mc-Comber, 18 Iowa, 12; Young v. Clippinger, 12 Kan. 148; Allen v. Holten, 37 Mass. 458; Ballard v. Child, 46 Me. 152; Laville v. Rightor, 17 La. 303; Second Univ. Soc. v. Dugan, 65 Md. 460; Hull v. Hull, 29 Am. St. 800; Bumpass v. Anderson, 51 S. W. (Tex.) 1103; Hall v. Chaffee, 14 N. H. 215. Johnson v. Johnson, 170 Mo. 34, recognizes this doctrine but holds that words showing source of title are surplusage and will not restrict the grant. (b) Three of the grantor life tenants were married women—Mrs. Harwell, Mrs. Adams and Mrs. Armor—at the time of executing the deeds in question and at the time of so doing and until Act of 1905, p. 40, by express statute no covenant of a married woman would bind her or her heirs except to convey her then interest. She and her heirs were not bound by her covenants of warranty nor would her warranty deed convey any after acquired title. R. S. 1879, sec. 669; Bank v. Robidoux, 57 Mo. 446; Brawford v. Wolfe, 103 Mo. 391; Hendricks v. Musgrove, 183 Mo. 300; Ford v. Unity Church, 120 Mo. 498; Wilson v. Fisher, 172 Mo. 10; 21 Cyc. 1324, 1325; Cockrill v. Hutchinson, 135 Mo. 74; Crenshaw v. Creek, 52 Mo. 98. (c) By our statute heirs are liable on the covenants of their ancestors to the extent of assets descended to them. R. S. 1879, sec. 3944; R. S. 1909, sec. 2875. At common law and prior to the amendment of our statute in 1879 a devisee was not so liable. 8 Am. & Eng. Ency. Law (2 Ed.), 162, note; Bartlett v. Ball, 142 Mo. 28; Sauer v. Griffin, 67 Mo. 654; Keen v. Watson, 39 Mo. App. 172; Bartlett v. Tinsley, 175 Mo. 319; Hunt v. Lucas, 68 Mo. App. 525; Walker v. Deaver, 79 Mo. 677. A living person has no heirs and so the children of Mrs. Adams and Mrs. Armor cannot be liable. (d)   Nor is anyone made

liable on the covenants of the ancestor by reason of gifts or advancements to such person. Irvine v. Leyh, 102 Mo. 200; 14 Cyc. 200. Advancements are purely matters of statute. Turpin v. Turpin, 88 Mo. 337; Estate of Williams, 62 Mo. App. 349. (e) A husband who joins with his wife in a warranty deed to her land in which he has no interest does not become liable on the warranties therein and so the husbands of Mrs. Armor or Mrs. Adams, or Mrs. Harwell, or their heirs, by reason of assets descended are not liable to a remote grantee on any covenants running with the land. Trust Co. v. Fullen, 114 Mo. App. 633; Mygatt v. Coe, 152 N. Y. 457. (f) These remaindermen do not claim or derive title from their ancestors the life tenants but from Greene Moore as remainderman. They are not therefore, estopped to assert title by any covenant of their ancestors. 8 Am. & Eng. Ency. Law (2 Ed.), 164; Barlow v. Delaney, 86 Mo. 583; Foote v. Clarke, 102 Mo. 394; Bartlett v. Ball, 142 Mo. 28. (g) Defendants are remote grantees under the deeds of the Moore children and can and do claim only on covenants running with the land. Such covenants are governed by the laws of the State where the land is situated. But if governed by the laws of Georgia, where the deeds were made, then there are no covenants of warranty as in that State there are no implied covenants arising from the use of "grant, bargain and sell" or otherwise. Code of Georgia 1895, sec. 3613; McDonough v. Martin, 88 Ga. 675, 18 L. R. A. 343; Tiedeman, Real Prop, sec. 859, p. 703; 3 Wash. Real Prop., 489; 11 Cyc. 1046; Jones, Real Prop. Conveyancing, sec. 834, p. 679; Aiken v. Franklin, 6 L. R. A. 360; 8 Am. & Eng. Ency. Law (2 Ed.), 77, note 5; Douglass v. Lewis, 131 U. S. 75.

*George Hubbert* and *Edwin L. Moore* for respondent.

ROY, C.—This suit was begun in Newton county, February 8, 1904. The original petition was in two

counts, one to quiet title, and the other in ejectment. There was a finding and judgment for the defendant, and on appeal the judgment was reversed and the cause remanded. [See Armor v. Frey, 226 Mo. 646.] A change of venue followed to Barton county. At the April term, 1912, the petition was amended so as to include a count in partition in addition to the former counts. The answer tendered new issues which were not involved in the former suit. We will not set out the pleadings, and will merely state they were broad enough to cover all the facts shown in this statement.

On the second trial the court again found against the plaintiffs on all the issues and entered judgment accordingly. The plaintiffs have appealed.

In 1857, Charles A. Davis and Greene Moore, both residents of Greene county, Georgia, were extensively engaged in buying wild land in Missouri, for the purpose of resale. To facilitate their business, they entered into a contract with Johnson & Coleman of St. Louis, Missouri, in writing, in which Johnson & Coleman agreed to furnish their services in locating and entering and purchasing lands in Missouri, and in looking after them generally. Said contract contained the following:

"Said lands so entered shall be held for the period of five years, unless the parties agree to sell sooner, and said second parties, whenever called on, shall aid in the sale without charge.

"On the sale of said lands, the second parties, as compensations for the locations, entries and purchases, the assessment and payment of taxes, for general oversight and for assistance in making sales, shall receive the following percentage on the sales, to be paid out of each separate sale, viz.: If the tract brings five dollars per acre or under, the second parties shall receive five per cent; if it brings above five dollars and not above ten they shall receive ten per cent; if it brings ten dollars and not above fifteen they shall re-

ceive fifteen per cent and for all sums per acre above fifteen dollars they shall receive twenty per cent.''

Johnson and Coleman made the following agreement with John H. Miller indorsed on said contract:

"Assignment.

"Know all men by these presents:

"That in consideration of assistance rendered by him in the location of the lands made under this contract we hereby transfer and assign to John H. Miller one-third our interest in the contract and said Miller, by signing hereto, obligates himself to take a superintending control over the lands located and entered and bear his share in the burden of this contract.

"Witness our hands and names this 25th day of Sept., 1857."

About ten thousand acres of land were entered and patented to Charles A. Davis and Greene Moore in Newton, Barton and other counties in this State. Greene Moore died in 1872. He left a will executed and proved according to the laws of this State and probated in the court of ordinary of Greene county, Georgia. That will is copied in full in the former opinion of this court. We will not recopy it. By the second, third, fourth, fifth and sixth items he gave to his children, Henry A. Moore, John W. Moore, Annie F. Adams, his grandson, Holcomb G. Moore, and his wife, Eliza L. Moore, respectively certain legacies and bequests of property in Georgia. There were other items in the will as follows:

"Item 7th.

"I have given my older children, to-wit, Adrianne W. Armor and Sarah Lee Harwell, as follows, to my daughter first named: Three thousand dollars in money and property and to my daughter last named, twenty-four hundred dollars. My purpose in this will, subject to the exceptions hereinafter mentioned, is to equalize my children so far as I can do so, in the distribution of my property and to that end I direct that

in the division of the residue of my estate each child shall be made to account for all the property given him or her herein, or in any other way as advancements at the estimates made by myself and that my wife shall account likewise before sharing in the said residue. I except from the general rule of equality the cases of my son Henry Antoine and John Whitfield Moore and direct that the mill property and water power herein given them may be had by them over and above a share of my estate.

"Item 8th.

"All the rest and residue of my estate not herein devised and bequeathed specifically I direct shall be shared by my children and wife, not including my grandson, Holcomb G. Moore, subject to the provisions of the 7th item of this my will.

"Item 9th.

"Upon the death of my children without issue I direct that the share of such child shall revert to my estate and be divided equally amongst my surviving children and the children of such of my children as may be deceased, share and share alike. Upon the death of any one of my children leaving issue I direct that the property herein given to such child shall go to his or her children, and wife in case of a son, in such parts and proportions as he or she may direct by last will and testament, provided no wife of any son or grandson so dying shall take more than a child's share under any such will."

The testator appointed his son, John W. Moore, and his sons-in-law, James N. Armor and James M. Harwell, his executors. Harwell failed to qualify as such executor and the other two qualified and settled the estate. There was at that time a statute law of the State of Georgia as follows:

"2557. (2516). Sale of wild land. On application by the administrator and due notice advertised as hereinafter provided in case of lands, the ordinary may

grant an order authorizing the administrator to sell, at private sale, wild uncultivated land lying in counties other than of the administration: Provided, no objection is filed by anyone interested in the estate, and the ordinary is satisfied that such sale is preferable.''

On October 7, 1872, on the petition of the executors, the court of ordinary of Greene county, Georgia, made an order ''to sell the wild lands in Missouri at private sale.''

On May 1, 1873, Ann F. Adams and husband, Sarah L. Harwell and husband, John W. Moore and wife, Henry A. Moore, Eliza L. Moore and Adrian W. Armor, executed to James N. Armor, a power of attorney, reciting:

''Whereas, Greene Moore, late of Greene county, Georgia, by his last will and testament, willed, devised and bequeathed unto his wife Eliza L. Moore, and his children, Mrs. Adrian W. Armor, Mrs. Ann Fannie E. Adams, Mrs. Sarah L. Harwell, Henry Antoine Moore and John W. Moore, all the real estate hereinafter mentioned,'' and giving to said attorney power ''for us and in our names, to sell and dispose of absolutely in fee simple, all our right, title and interest, joint or several, of, in and to any and all lands, tenements and hereditaments and real estate, lying and being situated in the counties of Greene, Barton, Laclede, Barry and Newton, in the State of Missouri, the same being land located and owned by me, Chas. A. Davis, and the said Greene Moore in his lifetime, yet unsold, and all our interest in all other lands in said State of Missouri, for such price or sum of money, and to such person or persons, and on such terms and conditions as he shall think best and convenient, and also for us and in our names and as our act and deed, to sign, execute, acknowledge and deliver such deed or deeds and conveyances for the absolute sale and disposal thereof, either with or without covenants of warranty, or any part thereof, with such clause or clauses,

covenant or covenants, and agreement or agreements, to be therein contained as our said attorney shall think fit and expedient.''

On June 2, 1877, a deed was executed and acknowledged, the material parts of which are as follows:

''Know all men by these presents, that the undersigned Ann Fannie E. Adams and Josiah F. Adams and Sarah L. Harwell and James M. Harwell, her husband, and John W. Moore and Eliza C. Moore, his wife, and Henry Antoine Moore and Eliza L. Moore all by James N. Armor, their attorney in fact, duly authorized by their letters of attorney under their hands and seals, and James N. Armor and Adrian W. Armor, his wife, for themselves, all heirs and legatees under the last will and testament of Greene Moore, late of Greene county, Georgia, all parties of the first part, for and in consideration of the sum of $7000 to them in hand paid by Charles A. Davis of Greene county, Georgia, the receipt whereof is hereby acknowledged; have granted, bargained and sold and do hereby grant, bargain and sell unto the said Charles A. Davis, said party of the second part, and to his heirs and assigns forever, all our right, title and interest (the same being an undivided one-half interest as sole heir and legatees of Greene Moore, deceased, in the real estate hereinafter described) of, in and to the following described lots, tracts and parcels of land situated in the State of Missouri and in the counties mentioned, as follows, to-wit: (Conveys the land in controversy and other lands.)

''To have and to hold the real estate hereinbefore described, with all the rights, privileges and appurtenances thereunto belonging or in any wise appertaining unto the said Charles A. Davis, and to his heirs and assigns forever.

''The said parties of the first part for themselves, their heirs, executors and administrators, do hereby covenant and agree to and with the said Charles A. Davis, his heirs, executors, administrators and as-

signs, that the said premises and every part thereof are free and clear of any encumbrance done or suffered by them, and that the title to said real estate and every part thereof against the lawful claims and demands of all persons whomsoever claiming or to claim any right or title thereto by, through or under them they will forever warrant and defend.''

At that time Eliza L. Moore, the widow, was dead. By mutual mistake that deed failed to describe that part of the lands now owned by this defendant, and on February 1, 1884, the grantors in the former deed executed and acknowledged a general warranty deed, by which they conveyed the undivided half of the land in controversy herein and some other land to said Davis for the expressed consideration of a thousand dollars. The grantors therein being therein described as ''heirs and sole legatees and devisees under the last will of Greene Moore.'' James N. Armor as attorney in fact executed and acknowledged that deed for all of the grantors except himself and wife who acted in their own right. The following paper was executed by James N. Armor:

''Greene County, Georgia, June 1, 1877.
''Know all men by these Presents:

That I, James N. Armor, executor of Greene Moore, late of Greene county, State of Georgia, deceased, have sold unto Charles A. Davis, Sr., of same State and county, the whole of the interest (being one-half) of all the lands owned jointly by said Davis and said estate in the State of Missouri, being seven thousand seven hundred and eighty-seven acres more or less, for which parcels aforesaid I have given unto said Davis my quitclaim deed as executor aforesaid, and in consideration of the conveyance unto said Davis of said parcels of land, as well as in full payment for any amounts due or unpaid unto the said Davis and said estate for sales made at any term previous to July 1, 1877.

"The said Davis has paid unto me for the two'considerations above mentioned the sum of seven thousand dollars, the receipt whereof is hereby acknowledged; and whereas, there is a portion of the land sold previous to January 1, 1877, for the mutual benefit of the said Davis and the said estate, of the proceeds of which each of the parties at interest have received their equal share; and whereas, there may possibly arise some suit or litigation on the part of Johnson & Coleman, or parties claiming under them as regards their rights to a portion of the proceeds; now should such suit or claim be made against the said Davis, or estate of Greene Moore, I hereby obligate to pay half of any damage or claim that may be legally obtained, as well as half the expenses of defending such suit or claim against said Davis and said estate of Greene Moore.

"J. N. Armor, Executor of Greene Moore, Dec."

There was a stipulation as to facts on trial, containing the following:

"(1) The executors of the will of Greene Moore duly qualified as such in the court of ordinary of Greene county, Georgia, and there made distribution and final settlement of said estate. That said executors in the distribution and settlement of said estate did so according to the provisions of the seventh clause of said will and caused each of the children and widow of Greene Moore to account for all the property given to him or her therein or in any other way as an advancement at the estimated values made and fixed by said Greene Moore and made said devisees equal to the amounts received by each from said estate as therein provided.

"(2) That recent search has been made in the records and files of the court of ordinary, and no record or paper can be there found showing or stating that the executors of said estate of Greene Moore ever made any report to the court of ordinary of Greene county, Georgia, as to the sale of any lands in Missouri,

or that there was any order made by said court approving any such sale, other than what is found in the annual and final settlements or returns of proceeds and vouchers of said executors and their approval by said court and distribution of proceeds of sales of such lands.''

On December 27, 1882, Charles A. Davis conveyed to the defendant by general warranty deed in the usual form the southeast quarter of section 1, township 26, range 30, in consideration of $1,360 and on the same day he conveyed to Jacob Frey the southwest quarter of the same section, by the same kind of a deed. The defendant has since acquired the title of Jacob Frey in said land. The will of Greene Moore and the power of attorney and the deeds herein mentioned were all promptly recorded in the proper county in Missouri.

Eliza L. Moore, the widow of Greene Moore, died at her residence in Greene county, Georgia, March 9, 1877. She left a will by which she gave Mrs. Harwell two thousand dollars, Mrs. Adams one thousand dollars, Mrs. Armor one hundred dollars, and to Henry A. and Holcomb G. Moore each five dollars, and gave the residue of her estate to John W. Moore. Mrs. Harwell died in 1892, leaving five children, Adrian A., Annie H., Robert H., Sarah R., and Ransom H.; the latter died in 1892, leaving four children, Armor M., Kate G., Annie F., Howard H., and a widow. Henry A. Moore died without issue, in January, 1903. He left a will by which he bequeathed to Park G. Moore, a son of John W. Moore, about $2500. James N. Armor, the husband of Adrian W. Armor, died in 1894, leaving a will, the material parts of which are as follows:

"Item 2. I give, bequeath and consign to my daughter, Cora Lou Armor, forty shares of stock in the Georgia Railroad and Banking Co., and one thousand dollars in money. I have already given to my said daughter two seven per cent bonds of the city of Augusta of one thousand dollars each, two six per cent

Deantinac bonds of one thousand dollars each, ten shares of stock in the Georgia Railroad and one thousand dollars in money. The advancements to her with the above legacy of forty shares of stock in Georgia Railroad and Banking Co. and one thousand dollars in money amount to the sum I have advanced to each of my four sons heretofore and at different times.

"Item 3. All the rest and residue of my estate not hereinbefore disposed of including all my property, real, personal or mixed, of which I may die seized and possessed and in which I may have any interest legal or equitable, I give, divide and bequeath absolutely to my wife, Adrian W. Armor."

Mrs. Armor is still living. She has the following children: William G., James E., Walter F., and Cora L., who married Mr. Turnell in 1894. Mrs. Armor had a son, Charles H., who died March 9, 1910, leaving a widow and four children, Charles R., James E., Effie M., and Robert C. The children of Mrs. Armor have each received three or four thousand dollars from her as advancements.

John W. Moore died in April, 1911, leaving a widow Eliza C., and three children, Park G., Girard A., and Lillias E., who married Mr. Wright.

It was not shown that John W. Moore left any property of his own, but he left a will with the following provisions therein:

"Item First. I give, bequeath and devise to my son, Park G. Moore, all that certain tract or parcel of land, known as the Cunningham Place, in said State and county, bounded north by lands of T. H. Crawford, east by lands of said P. G. Moore and Mrs. J. W. Moore, south by lands of P. G. Moore, known as Park Place, and west by Oconee River, said tract containing four hundred and thirty-five and one-half (435½) acres, be the same more or less. I make this gift to my son by virtue of the authority given me in the last will and testament of my father, Green Moore."

Mrs. Adams is still living; six of her children, to-wit: William E., Ida M., Alice, May, Bessie, and Calhoun R., are living. One, Robert F., died leaving a widow and one child, Fannie E. Holcomb G. Moore is still living.

Immediately after the purchase of the land in 1882, the Freys took possession of the land, enclosed it and made valuable improvements on it.

All of the living descendants of Greene Moore are made plaintiffs herein, and so far as the record shows, none of them has ever resided elsewhere than in the State of Georgia.

I. We will not enter upon a reconsideration of the question as to whether the remainder created by the ninth item of Greene Moore's will is valid. That was rightly determined on the first appeal and there being no change in the facts bearing on that issue, the question is not for consideration on this appeal.

**Point Decided on Prior Appeal.**

II. We shall not undertake to decide whether there is an implied power of sale given to his executors in Greene Moore's will; nor shall we determine whether the Georgia executors of the will had the power to sell and convey lands in Missouri. We have reached the conclusion that there was no sale or conveyance of the land in Missouri by the executors, and that is decisive of the other questions mentioned.

**Conveyance by Executors.**

In 18 Cyc., p. 1334, it is said: "At common law a mere naked power of sale as distinguished from a power coupled with an interest could not be exercised by less than the entire number of executors appointed. This rule was modified by statute as to cases in which a portion of the executors refused, and as so modified was adopted as a portion of the common law of the United States, and it may now be said to be the general

rule in the United States that a power of sale unless expressly restricted may be exercised by the representatives who qualify or survive.''

It is contended by the respondent that the question whether there has been a sale of this land by the executors must be determined by the law of Georgia. Without assenting to that proposition, we call attention to the fact that it was held in Hosch Lumber Co. v. Weeks, 123 Ga. l. c. 340, that in selling wild land under the statute of that State, the executors must all join. That doctrine was reaffirmed on a second appeal, reported in 133 Ga. 472.

The industry of counsel for respondent has not been able to furnish a precedent to the contrary. They cite Roe v. Smith, 85 N. Y. Supp. 527. In that case the will gave two executors the land in trust with power to sell and distribute proceeds among the testator's children at the end of the trust. The executors together entered into an oral agreement to sell, and the contract was reduced to writing at their direction. But when it came to signing, one of them was not present, but directed the other to sign for him. The contract purported to be by both, but was only signed by one. The court said:

''The one being authorized by the other, his signing binds both, the contract not being under seal. It is the same as the case of an agent signing his own name instead of that of his principal to an executory contract; the principal is bound, and oral evidence to prove that he authorized the agent to sign is not excluded by the Statute of Frauds. [Briggs v. Partridge, 64 N. Y. 357, 21 Am. Rep. 617.]

''The rule that delegated authority involving the exercise of judgment and discretion cannot be redelegated is not in the way. The trust authority to agree to sell was not delegated; no exercise of judgment and discretion was delegated; only the formal signing was

delegated after the terms of the contract had been agreed upon.''

In Gates v. Dudgeon (N. Y.), 66 U. S. Rep. 116, cited by respondent, it was held that where an executor with power under a will to sell realty and with full knowledge of the facts, has determined to sell at a fixed price, he may authorize his attorney to close the sale, and that the contract thus made by the attorney is binding upon him. Those cases have no parallel in the facts of this case.

We thus conclude that even if Armor as such executor made a quitclaim deed to Davis, it was not effective for want of the concurrence of John W. Moore, the other executor.

It is earnestly contended that the deed of February 1, 1884, from the Moore devisees to Davis constituted a good executor's deed from John W. Moore and James N. Armor as such executors to Davis. We say no. That deed nowhere has any mark to indicate that it is the deed of the executors. On the contrary, it indicates that it was intended to be and is the individual deed of the grantors.

In Grace v. Perry, 197 Mo. l. c. 568, it was, in effect, held that wherever there is a conveyance by the donee of a power, although there is no reference to the power, yet if the conveyance cannot be given full effect without its being construed as an execution of the power, then it will be held to be such execution.

That rule does not apply in this case. An executor in making a sale of realty under a power in the will does not act merely as the donee of the power. He acts officially. It is so held in Woerner's Law of Administration. [2 Ed.], sec. 480. The same author, vol. 2, sec. 1067, says: ''The deed of an executor or administrator should show upon its face the authority under which it was given, with sufficient certainty to enable the act done to be traced to the authority vested in him; for such a deed conveys no title unless executed pur-

suant to the decree or order of some court of competent jurisdiction. But it is not necessary that the grounds or reasons upon which the court proceeded in making the order of sale be specified, if the legal necessity to sell appear. Deeds have been held sufficient, not reciting the authority by which given, but referring to the same, and the administrator describing himself as such; and even without being signed by the administrator, but the capacity in which he acted appearing in some part of it.''

It was held in Lockwood v. Sturdevant, 6 Conn. l. c. 385: ''It is an established principle, that the authority by virtue of which an administrator is empowered to sell and convey estate must appear on the deed of conveyance, and with such certainty that the act done shall visibly be warranted by the *power conferred*. [Rex v. Austrey, K. B. Easter term, 1817; 3 Stark. Evid. 1198; Rex v. Croke, Cowp. 29; 2 Swift's Dig. 789, 790; Oliv. Conv. 178.] And although in some cases it has been held, that the authority need not be referred to when the act done is of such a nature that it can have no operation unless by virtue of the power (4 Cruise's Dig. 240; 3 Johns. Ch. Rep. 551; 6 Co. 17b; 2 Brown's Chan. Rep. 300; 8 Ves. 609; Litchfield, Com. Dig. tit. Poiar. C. 4), yet this principle has never been supposed applicable to the conveyances made by executors and administrators. [Griswold v. Bigelow, 6 Conn. 258.]''

We have not been able to find any authority for holding that a deed appearing on its face to be the individual act of the grantor can be construed to be his act as executor, either under power in a will, or under an order of the court.

III. There is a contention as to whether the land in Missouri was partnership property of Partnership Realty. the firm of Moore & Davis. We shall consider the case on the theory that it was partnership assets.

In Shumaker on Partnership, p. 202, it is said:

"As has been seen, the legal title to real estate cannot be held by the firm, as such. Where the legal title to realty is vested in more than one partner, it is held by them as tenants in common, but in equity it is chargeable with the partnership debts, and with any balance which may be due from one partner to another upon winding up the affairs of the firm."

Bates on Partnership, vol. 1, sec. 300, says: "The remaining partner has more than a mere lien to have the property applied to paying debts, he has an equitable estate; he has the right to control the property, and to treat it as personalty in order to wind up. He can sell the entire beneficial interest without proceedings to get a decree for that purpose, and the buyer is not obliged to see to the application of the purchase money, as such burden would greatly reduce the value." And the same author (sec. 297) says: "But the now unanimous American doctrine is, that after the partnership demands are satisfied, the unexhausted surplus is real estate. The basis of absolute or partial conversion into personalty is the presumed intention, and equity will not go further and convert it into personalty for additional purposes, such as for the mere purpose of division, unless the intention to convert for more than partnership purposes appears; hence, in this country, the widow has dower out of a partner's share in the surplus, and the share goes to the heir and not to the executor."

Chancellor WALWORTH in Buchan v. Sumner, 2 Barb. Ch. (N. Y.) l. c. 206, holds that the legal title will remain undisturbed except to protect the rights of members of the firm. Of course that includes the rights of creditors.

In Buckley v. Buckley, 11 Barb. 75, it is said: "It is due to the creditors and the members of the firm that

the property should not be withdrawn until the partnership affairs are adjusted. But as between heir and executor, the reason of the rule fails.''

There is no creditor of the firm of Moore & Davis making any claim against the land. Unless there has been a conveyance of the land by the surviving partner as such the title remains unaffected by the fact of such partnership.

There is a contention as to whether the surviving partner had the power to sell the land in Missouri. We leave that question without consideration, for the reason that we hold that there has never been any sale by the surviving partner.

The deeds made by Davis to the Freys were not made by him as such surviving partner, and did not purport to be so made. At that time Davis, as he supposed, had become the owner of the entire Moore interest and claimed to own the land absolutely as his own. By no process of reasoning can the deeds to the Freys be construed as the deeds of the surviving partner. In the receipt given by the executor Armor to Davis at the time of the making of the deed to Davis in 1897, it was agreed that each should pay half of the Johnson and Coleman claim. Whatever other effect such receipt may have had, it shows that Davis did not from that time assume to hold the land as partnership assets, but as his own.

We are thus driven to the conclusion that the interests of the remaindermen under Greene Moore's will have never been divested by any deed either of the executors or of the surviving partner. Those remaindermen did not receive from the executors or from anyone else any of the proceeds of the sale of the land to Davis. The receipt of such proceeds by the life tenants did not in any way bind or estop the remaindermen. They do not take under the life tenants, but directly from the testator, Greene Moore.

IV. On the death of Henry A. Moore in 1903, without issue, Mrs. Armor, Mrs. Adams, John W. Moore, and Holcomb G. Moore each became entitled to a fifth of the twelfth interest devised to Henry A. for life. The interest thus acquired by John W. passed by virtue of the warranty in his deed to Davis to the defendant.

**Estates in Remainder: Limitations.**

The issue of Mrs. Harwell became entitled to the other fifth of the Henry A. Moore twelfth.

The interests of Mrs. Armor and Mrs. Adams thus acquired are not barred by the Statute of Limitations as they did not vest in possession until 1903, within ten years before this suit was instituted.

V. It is claimed by the respondent that the four sons of Adrian W. Armor received advancements from their father, and that her daughter, Mrs. Turnell, received a bequest of several thousand dollars under the will of her father; and that a liability exists against them in favor of the defendant on the warranty of their father to the extent of the advancements and bequest received by them.

**Covenants of Warranty: Liability.**

It is true that a husband was liable at that time on his warranty contained in a deed made by him and his wife conveying the wife's land. It was so held in Pratt v. Eaton, 65 Mo. 157, and in Foote v. Clark, 102 Mo. l. c. 405. But no authority can be found for holding an heir liable on the covenant of his ancestor on account of advancements, and we hold that no such liability exists.

The question next arises whether Mrs. Turnell, a a resident of Georgia, is liable on the warranty of her father, a resident of that State, by reason of the fact that she was given property in that State under the will of her father who died there and whose estate was there administered. At common law the devisee or

legatee was not so liable.  We have a statute making
the devisee liable on the covenants of the
**Common
Law State:
Presumptions.**       ancestor to the extent of the assets re-
ceived.  The evidence does not show that
such a statute exists in Georgia.  This
State cannot by statute impose an obligation upon a de-
visee in that State under such circumstances.  Georgia
is one of the States originally under the common law;
and, in the absence of any showing of a statute of that
State it will be presumed that the common law is in
force there.  [Benne v. Schnecko, 100 Mo. 250.]

Foote v. Clark, 102 Mo. 394, was a case similar to
this except that the plaintiffs inherited lands from the
warranting ancestor in North Carolina.  It was held
that the plaintiffs were not estopped to claim their
interest in the Missouri land, but it was held that they
were liable on their ancestor's warranty to the extent
of the lands descended.  In that case it was said (l. c.
408):

"Now we do not say that the defendant has an
equitable lien on the land in question for the damages
which will arise from the breach of the covenents made
by Mrs. Hunt.  But the effect of a recovery of the land
by the plaintiffs is to make breach of the covenants of
their mother.  The very judgment which they obtain
brings upon them a liability to the defendant for a
breach of those covenants.  There are no assets in this
State belonging to her estate, so there can be no ad-
ministration upon her estate here.

"The plaintiffs are nonresidents and now insolv-
ent.  It is manifestly unjust and inequitable to allow
the plaintiffs to recover the land, and then send the de-
fendant to another State to recover his damages—a
fruitless errand.  His remedy at law is wholly inade-
quate under the circumstances here disclosed.  Insolv-
ency or nonresidence often furnishes a ground upon
which a court of equity will declare an offset, where the
offset would not be allowed at law.  [Field v. Oliver,

43 Mo. 200; Fulkerson v. Davenport, 70 Mo. 541; Barnes v. McMullins, 78 Mo. 260; Wallenstein v. Selizman & Co., 7 Bush, 175.] Such relief is not granted on the ground that the parties have cross demands, but in order to prevent injustice."

In that case the heir was held liable at common law to the extent of assets descended in North Carolina.

As the Missouri statute creates no liability on account of a devise of property in Georgia, and as there is no such law in Georgia so far as the record shows, we hold that Mrs. Turnell is not liable to the defendant on account of the bequest to her in her father's will.

VI. John W. Moore by will executed the power of appointment contained in Greene Moore's will, and appointed his son, Park G. Moore, as the appointee of the remainder in the land devised for life to said John W. Moore. Such an appointment was not a devise of land by John W. Moore to his son, Park G. It was a mere execution by will of the power of appointment; and the son took, not from his father, but from his grandfather, Greene Moore, by virtue of such appointment. Such being the case, Park G. Moore is not liable by reason of land received by him under such appointment.

*Appointment Under a Power.*

VII. Mrs. Eliza C. Moore, the then wife and now the widow of John W. Moore, was not bound by the warranty in the deed from the Moores to Davis. The power of attorney under which the deed to Davis was executed clearly showed that she had no interest in the land except as the wife of one of the grantors. The interest which vested in her as a remainderman under Greene Moore's will on the death of her husband did not pass under the warranty in the deed to Davis, and she is an equal owner with her children in the twelfth interest in which her husband held the life estate.

*Liability of Wife.*

VIII. The respondents insist that those plaintiffs herein who claim estates in remainder up-. Quieting Title: Limitations: Adverse Possession. on pending life estates, and who are not under disability, and who failed to sue to quiet title within ten years after their right to bring such suit accrued, are barred not only of their right to bring such suit but also of their estate in remainder. Some of this series of suits were brought within ten years after 1897 and some later.

Murray v. Quigley, 119 Iowa, 6, and Crawford v. Meis, 123 Iowa, 610, under similar statutes hold that the remaindermen are so barred. Judge PHILIPS in Hubbard v. Goin, an Iowa case, reported in 137 Fed. 822, followed those cases.

We have reached a different conclusion for the following reasons: The life estate is the support and foundation on which the remainder must stand.

In Allen v. DeGroodt, 98 Mo. l. c. 162, it was said: "And it is well-established law that if a life tenant renew a lease, or buy in an encumbrance or the like, the fealty which he owes to the remaindermen will convert him into a trustee for the benefit of such remaindermen."

In Salmon v. Davis, 29 Mo. l. c. 181, it was said: "A person having a life estate in property cannot, by his acts or declarations set up pretensions to an absolute estate, so as to make his possession an adverse one to the reversioner or remaindermen. The reason of this is that there is no right of action in the reversioner until the particular estate has determined, and the possession of the life tenant is entirely consistent with the title of the reversioner. In fact the latter concedes the existence of the former, and whatever the tenant for life may do or say about his title can be of no consequence to the reversioner; for, whether true or false, the latter cannot disturb the life tenant during the admitted duration of his tenancy. It is impossible, therefore, for the tenant for life to make his possession an

adverse one to the claim of one who has the remainder or reversion." That case was cited with approval in Keith v. Keith, 80 Mo. l. c. 127; Hall v. French, 165 Mo. 439; Charles v. Pickens, 214 Mo. l. c. 215. To the same effect is Bradley v. Goff, 243 Mo. 95.

Pomeroy's Equity, vol. 4, sec. 1397, speaking of statutes for quieting title says they are enabling acts. It follows that they are not penal, restrictive or destructive. A suit under the statute to quiet title may be transformed or converted into a very different kind of suit or suits.

In Griffin v. Nicholas, 224 Mo. l. c. 291, it was held that such a suit might be "converted into a suit in equity." The amendment made to the statute in 1909 was intended to give full affirmative relief in case the action was so converted. If a person invokes the jurisdiction of the court by the institution of such a proceeding, he must be ready to present every claim which he may have to any interest in the property; and his opponent must do likewise, and both will be concluded by the result as to every interest which either may have whether presented or not. [Emmert v. Aldridge, 231 Mo. 124.]

It still remains that the suit to quiet title, as contemplated by the statute, and before it is so converted, is a proceeding by one claimant of an interest in real property against another such claimant, asking the court to ascertain and determine, define and adjudge the title, estate and interest of the parties. It does not ask for the recovery of real estate or the possession thereof. It does not ask affirmative relief. It seeks simply an ascertainment of the *status quo* of the title or titles to the property. We will compare a suit to quiet title under the statute with one for partition. In partition, under section 2575, the court may decide upon the adverse claims of the parties. Under section 2572, it "shall declare the rights, titles and interests of the parties." In Chamberlain v. Waples, 193 Mo.

l. c. 108, it was said: "The essential requisites of a proper judgment in a partition proceeding are that the court shall ascertain and define the interests of the parties among whom the land is to be partitioned, and it is equally essential that the judgment predicated upon a proceeding based upon section 650 should ascertain and define the title and interest of the parties to the land in dispute between the parties to the suit."

In Real Estate Co. v. Lindell, 133 Mo. 386, it was held that a partition suit is not one to recover lands and that the Statute of Limitations does not apply. Either one of several cotenants can ask for partition the one against the other. The right is reciprocal. If they let more than ten years go by, they will be equally at fault and neither can charge the other with having gained or lost anything by the delay. The statute under discussion contemplates two or more adverse claimants and gives to each the right of action against the other regardless of the possession of the property. They may each allow ten years to elapse after knowledge of the other's adverse claim without proceeding to quiet title. The statute will not, for such failure, bar the rights of both, and its language does not give preference to one over the other. It may develop in the course of the proceeding that some right claimed or some affirmative relief sought by the parties is barred by the Statute of Limitations, but we feel sure of our position when we say that the mere failure for ten years to sue under the statute after the right to sue has accrued does not bar the right to so proceed thereafter, and such failure of a remainderman does not bar his estate in remainder.

The case of Bradley v. Goff, 243 Mo. 95, involved every question here under discussion. The remaindermen were made defendants in a suit by life tenants claiming adversely to them to quiet title. In their answer they made the necessary allegations and asked that their title to the estate in remainder be quieted in them. That case as reported does not show the date

of the filing of that answer. We have examined the ab-
stract of the record filed therein, from which it ap-
pears that the answer was filed December first, 1908,
more than ten years after the statute went into effect
and more than ten years after their right to bring such
suit accrued. It did not occur to counsel or court in
that case that the Act of 1897 had in any way affected
the question of the Statute of Limitations as against
remaindermen. The court said, speaking through
BOND, C. (l. c. 102): "Respondent suggests that the
Statute of Limitations ran in his favor. Obviously
there is no merit in that contention, for the remainder-
men in the deed under review are not yet entitled to
the possession of their estate."

Brewster v. Land & Imp. Co., 247 Mo. 223, so far
as it goes, is in harmony with our present position.

IX. We are of the opinion that the
**Allowance for Improvements.** defendant is entitled to an allowance for
the improvements made by him in good
faith.

Freeman in his work on Cotenancy and Partition,
sec. 510, approved the doctrine announced in Green v.
Putnam, 1 Barb. 507, as follows: "To entitle the ten-
ant in common to an allowance on a partition in equity,
for the improvements made on the premises, it does
not appear to be necessary for him to show the assent
of his cotenants to such improvements, or a promise
on their part to contribute their share of the expense;
nor is it necessary for them to show a previous request
to join in the improvements, and their refusal. The
only good faith required in such improvements is that
they should be made honestly for the purpose of im-
proving the property and not for the purpose of em-
barrassing his cotenants, or incumbering their estate,
or hindering partition."

The defendant is entitled in a proper partition pro-
ceeding to have an allowance for whatever amount it
may be found that the value of land has been increased

by the improvements placed thereon in good faith, by the defendant.

As a result of the law as above declared applied to the facts in this case, we find that the rights, interests and estates of the several parties to this suit in said land are as follows:

The defendant owns the undivided half originally owned by Davis in fee simple.

The widow of Greene Moore got an undivided twelfth of the land in fee by the will, and that interest passed by her will to her children, and by their deed to Davis.

The twelfth interest devised to Mrs. Harwell for life, on her death in 1892 passed to her children under the will of Greene Moore as remaindermen. It is conceded that such interest has passed out of the Harwell children by the Statute of Limitations and is now vested in the defendant.

On the death of Henry A. Moore without issue and leaving no widow, in 1903, the remainder of his one-twelfth was divided into five parts, each part being a fifth of a twelfth or a sixtieth of the entire interest in the land.

John W. Moore was entitled to one of those shares, and such share passed to the defendant by virtue of the warrenty in the deed to Davis.

The defendant thus owns in fee forty-one sixtieths of the land. He also owns the life estates of Mrs. Armor and Mrs. Adams each in a twelfth of the land.

The children and grandchildren of Mrs. Harwell, *per stirpes*, own and are entitled to the possession in fee simple of the one undivided sixtieth of the land which fell to them as remaindermen on the death of Henry A. Moore without issue.

The widow and children of John W. Moore are the owners in fee simple of a twelfth interest in the land which fell to them on the death of their husband

and father, the life tenant. We note that his widow is not made a party to this suit.

The issue of Mrs. Armor and of Mrs. Adams respectively have contingent remainders in the shares of one-twelfth each devised to them. Mrs. Armor, Mrs. Adams and Holcomb G. Moore are each the owner of a sixtieth interest in the land and are entitled to the possession thereof in fee simple. Said interest fell to them on the death of Henry A. Moore.

X. The third count in the petition is in ejectment. Those plaintiffs who are the issue of Mrs. Harwell are entitled to a judgment that they recover the possession of their undivided sixtieth of the land, and those plaintiffs who are the children of John W. Moore are entitled to a judgment for the possession of their three-fourths of an undivided twelfth of the land. Mrs. Armor, Mrs. Adams and Holcomb G. Moore are each entitled to a judgment for possession of a sixtieth of the land. As to all other plaintiffs, the judgment should be for the defendant on the third count. Such judgment should be subject to defendant's rights to an allowance for improvements.

Ordinarily in ejectment rents are recoverable. It **Rents.** appears in this case that the interests of the plaintiffs who are entitled to judgment in ejectment are subject to the defendant's claim for an allowance for improvements. Plaintiffs are not entitled to their proportion of the full rental value, but only to such proportion of what the land would rent for without the improvements. There is no evidence in the case from which we can make such calculation.

XI. The second count, which is for partition, is **Partition.** dismissed, without prejudice, however, to the rights of the plaintiffs to maintain a new action for partition of the land in controversy.

**Adverse Possession.** A disseizure on actual adverse possession destroys the unity of possession among tenants in common and takes away the rights of partition until the title is determined by an action of ejectment. [Forder v. Davis, 38 Mo. 107; Shaw v. Gregoire, 41 Mo. 407; Haeussler v. Mo. Iron Co., 110 Mo. 188; Hutson v. Hutson, 139 Mo. 229; Estes v. Nell, 140 Mo. 639.]

**Reliance on Legal Title.** Where a plaintiff brings suit to establish an equitable interest in land, he may, in the same suit, have partition. [James v. Groff, 157 Mo. 402; Holloway v. Holloway, 97 Mo. 628; Barnard v. Keathley, 230 Mo. 209.]

The plaintiffs in this case have not alleged any equitable right to the land, and stand on their legal title. They are not entitled to sue for partition until after their possessory right is determined, and we are of the opinion that the court for partition is premature.

The judgment is reversed and the cause remanded with directions to enter a judgment in accordance with this opinion. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.