JOSEPHINE M. A. DEMOURELLE *v.* VINCENT PIAZZA.

1. SUPREME COURT PRACTICE. *Reversal on appeal of some defendants.*

If a decree of a chancery court appointing a trustee to execute a deed of trust be appealed by all of the defendants save one, who is recited in the appeal proceedings to be dead, and such decree be unqualifiedly reversed by the supreme court, the reversal wholly vacates the decree, although all the defendants were in fact alive.

2. DEED OF TRUST. *Substituted trustee. Void appointment. Sale.*

A sale under a deed of trust by a substituted trustee whose appointment is void is itself void.

3. SUBROGATION. *Volunteer.*

A volunteer purchaser of lands from two of three tenants in common who are ordered by a decree of the chancery court to pay a sum of money in default of which the land is decreed to be sold, the third tenant not participating in the sale or being a party to the decree, does not by subrogation acquire a right under the decree or the interest of the third tenant in the land, although the money paid by him was used in satisfying the decree.

4. SAME. *Purchase in good faith.*

The fact that a volunteer buys land in good faith and pays full value therefor cannot supply a lack of title in his grantors.

77 Miss.—28

5. INFANCY. *Estoppel by conduct. Injunction.*

> A bill to enjoin the prosecution of an action of ejectment on the ground of estoppel by conduct of the plaintiff therein during infancy, is insufficient if it fails to charge affirmatively fraudulent conduct on the infant's part and does not state facts which reasonably could have had the effect of misleading the complainant.

6. EJECTMENT. *Improvements. Equity.*

> If a defendant in ejectment be a purchaser for value in good faith and have placed valuable, permanent and not ornamental improvements on the premises, he can obtain adequate relief on account of said improvements in the suit at law and has no ground because thereof for a suit in equity.

FROM the chancery court of Warren county.

HON. WILLIAM C. MARTIN, Chancellor.

Piazza, the appellee, was the complainant in the court below; Demourelle, appellant, was defendant there. The purpose of the suit was to enjoin the prosecution of an action of ejectment.

The ancestor of appellant in 1873 executed a deed of trust on the land in controversy to secure a debt, and shortly thereafter died intestate, leaving a widow and four infant children, John, Patrick, and Richard Coffin, and the appellant, Josephine, now Mrs. Demourelle.

The party for whose security the deed of trust was executed, the trustee having died, instituted, in 1875, a suit in chancery against the widow and children of the grantor, seeking to have the court appoint a trustee to make sale under the deed, that instrument not providing for a substituted trustee, and a decree was rendered the same year appointing one McManus to make sale under the deed. In 1876 McManus sold the land conveyed by the deed, for a sufficient sum of money to extinguish the debt, and executed to the purchaser, the party to whom the debt was owing, and a complainant in the suit, by virtue of which he was appointed trustee. Thus matters stood until 1885, when a petition for an appeal to the supreme court from the chancery decree was filed in behalf of John, Patrick and

Richard, which recited that the widow and the present appellant, Josephine, were dead. The said appeal resulted in the reversal of the decree appointing McManus trustee in the deed of trust on the ground that the record did not show the death of the original trustee. The case thereon is reported, *Coffin v. Murphy,* 62 Miss., 542. Richard Coffin died intestate just after the reversal and before further proceedings in the cause, leaving his brothers, John and Patrick, as was supposed, his only heirs. On the return of the case to the chancery court, a claim was made therein by John and Patrick Coffin that the lands purchased at McManus' pretended sale had been in the possession of the complainants, and that the rents and profits thereof were sufficient to satisfy the debt secured by the deed of trust. On this contention a decree was rendered, after an accounting, adjudging $1,300 as remaining unpaid upon the debt and ordering the same, with costs, paid by John and Patrick Coffin, in default of which the land conveyed by the deed of trust was condemned to be sold by a commissioner of the court.

Shortly after the rendition of the $1,300 decree the following steps in the way of its execution were taken. The complainants, who had purchased under the pretended sale made by McManus, conveyed the land by quitclaim deed to John and Patrick Coffin, and the latter, for a consideration of $1,500, conveyed a part of said lands, that sued for in the ejectment, to appellee, Piazza, who placed valuable, permanent and not ornamental improvements upon the land. Of this latter sum the $1,300 decree and costs was paid. During all of this time, beginning with the appeal in the original suit, 1885, and up to the institution of the ejectment sought to be enjoined, 1897, the appellant was treated as if she were dead.

It was further shown that the appellant who was born in 1869 had knowledge of the pendency of the first suit while it was in progress, and that she frequently wrote letters to one of her brothers from an orphans' asylum in New Orleans, where

she was, and where she remained until her marriage in 1893, asking information about the same; that she was in Vicksburg on a visit, while yet under twenty-one years old, after the reversal by the supreme court, and while the matter of the account touching rents and profits was pending before the master or referee, and was then told by her brothers that a suit was depending about the property, and they promised to advise her of the result. It does not, however, appear that she was advised of the result of the suit until 1897, immediately before she began the ejectment.

A demurrer to the bill was overruled, and the defendant below, appellant, prosecuted an appeal to the supreme court.

*Dabney & McCabe,* for appellant.

If it be true, as is contended for by the appellee, that the failure to join appellant in the appeal had the effect of leaving the decree appointing McManus trustee in force as against her, and made his deed valid, then the appellee had a complete and adequate remedy at law, and his bill is demurrable for that reason, and ought to be dismissed.

But we insist that, notwithstanding the fact that appellee was not a party to the appeal, still, as the decree was simply a decree substituting a trustee, its reversal by one of the persons against whom it was rendered had the effect to reverse it as to all. It was not such a decree as could be held separable or several in any view of the case. Either McManus' appointment was good as a whole or it was bad as a whole. The court decided that it was bad, and it follows that his appointment, being illegal, his sale by virtue of his appointment as trustee to John and Elizabeth Murphy was invalid. Both went down together.

The bill avers that appellant was not represented before the referee appointed to take and state an account; that she took no part whatever therein, and that in the final decree she was not called upon to pay any part of the amount found due. On the contrary, beginning with the appeal, and in all subsequent

proceedings, the appellant was treated as dead. She was not, therefore, represented in all the subsequent proceedings, and the decree of January 16, 1889, was not binding on her.

There is a distinct allegation in the bill that the decree was not formally executed, and the allegation is equally plain that the appellee never purchased under that decree, and did not, and could not, acquire any rights thereunder.

Unless complainant had been a party to the proceeding, and the decree had been rendered against her, and the property had been sold thereunder, she could not be divested of her title.

The fact that the appellee may have paid as much as the property was worth to John and Patrick Coffin does not divest complainant of her title.

Nor is there any evidence afforded by the bill that there was any incumbrance on the property to be paid off. There may have been a judicial ascertainment of an indebtedness, in so far as John and Patrick Coffin were concerned, but there was certainly none in so far as appellant was concerned; the decree pretermitted her.

Appellee has no rights in the premises. He did not purchase the decree, nor did he pay it off. On the contrary, all he did was to buy the property from John and Patrick Coffin, whom he believed to be the owners of it as the only heirs at law of John Coffin, deceased, and paid to them the purchase money therefor. In this matter he was a mere volunteer, and nothing more. He was not a party to the suit, and there was no decree against him in the premises. He had no lien or interest in the property prior to his purchase, and he was not forced, directly or indirectly, to pay off this decree.

Nor did the appellee make any reasonable effort, so far as the record shows, to ascertain the owners of the property when he made the purchase. He might, by the exercise of diligence, have discovered the fact that the appellant was alive.

Nor did he see to it that she got her part of the purchase money. What money was paid was paid to her brothers and

appropriated by them, and she has not, so far as the record shows, ever received one cent, and she should not be enjoined from prosecuting her action of ejectment.

There is nothing in this case to show that the appellant has been guilty of such laches as would debar her from the prosecution of her suit. Before she could be charged with laches at all, it must be shown that she was guilty of such conduct as misled the appellee into the purchase of this property. She must have done something, or failed to do something upon the faith of which he acted.

*Shelton & Brunini,* for appellee.

There can be no question in this cause as to the fact that defendant was properly made a party to the bill filed in June, 1875. The recital in the decree appointing the guardian *ad litem* that it appeared to the court that process had been returned executed on the minor defendants, naming them, and that the mother had been properly summoned, cannot be questioned in this case. *Saddler* v. *Prairie Lodge,* 59 Miss., 572.

It follows that the decree appointing Nelson guardian *ad litem* for the minor defendants was, and is, binding on the defendant in this suit, and the final decree of October 7, 1875, appointing McManus trustee in place of the dead trustee, rendered on the answer of defendant by their guardian *ad litem,* and the *pro confesso* against the mother and the bill and exhibits was also binding on the defendant in this suit, and it must also be true that the sale to Murphy by McManus, the substituted trustee, was also valid and binding until the decree appointing McManus was reversed by the supreme court.

If it be true that because defendant in this suit was then believed to be dead when the appeal was taken by her guardian, she was not represented on that appeal, and cannot be held to have participated in it, it follows that the decree of October 7, 1875, appointing McManus trustee, and the sale by McManus to Murphy, remain unaffected by that ap-

peal so far as the defendant in this suit is concerned, and the title to her interest in the property remains in Murphy and his assigns, and she cannot vacate the decree of October 7, 1875, except by a direct appeal or by bill of review, and she is barred as to both of these proceedings, more than two years having elapsed since she became of age. Sections 2751 and 2752 of the annotated code.

If, on the other hand, though believed to be dead, the appeal prosecuted by her guardian operated to reverse the decree of October 7, 1875, as to defendant, then defendant was a party to that appeal and to the proceedings taken in the cause, after it was returned to this court, after the reversal of the decree of October, 1875, both the proceedings before the master and the proceedings to the final decree of January 16, 1889.

We do not stop to discuss which is the correct theory of the case; we leave it to the defendant to adopt either horn of the dilemma. If the latter be true, then on January 16, 1889, we find a decree adjudging that $1,300 was due on the deed of trust made by defendant's father, and ordering a sale of both pieces of property to pay this $1,300 to Murphy and $50 as the master's fee and the costs of court.

If the object of the sale, namely, raising the money to pay the debt and getting a fair value for the property, was accomplished by the private sale to complainant, we insist that complainant is vested with a complete equitable title which a court of equity will protect.

It is well settled in such cases that the court will keep the decree alive for the benefit of the purchaser. Pomeroy's Equity Jurisprudence, vol. 2, sec. 791; *Ib.*, sec. 798. The same doctrine is announced in *Clark* v. *Wilson,* 56 Miss., 756.

Complainant's whole claim rests on the simple technicality that the commissioner did not sell, and she nowhere intimates that a sale by the commissioner would have been of any benefit to her. *Lindsey* v. *Sellers,* 26 Miss., 173; *McDonald* v. *Myles,*

12 Smed. & M., 285; *Harper* v. *Hill,* 35 Miss., 73; *Green* v. *Bank,* 73 Miss., 542.

Complainant has been guilty of such laches as to bar any claim on her part for this property. *Metcalfe* v. *Perry,* 66 Miss., 78; *Bausman* v. *Kelley,* 8 Am. St. Rep., 662; *Wallett* v. *Haskins,* 2 Am. St. Rep., 501; *Irish* v. *Antioch College,* 9 Am. St. Rep., 638; *Cross* v. *Hedrick,* 66 Miss., 61; *Metcalfe* v. *Perry,* 66 Miss., 68; *Priebalsch* v. *Baptist Church,* 66 Miss., 345.

As to the objection that the remedy was complete at law, and that the court of law had jurisdiction of the case, we say that this objection cannot avail in this court, and in support of that position we refer to sec. 147 of the constitution, and the case of *Cazeneuve* v. *Gurell,* 70 Miss., 521.

WHITFIELD, J., delivered the opinion of the court.

The reversal by this court of the decree appointing Michael McManus trustee, was a reversal as to all the parties, since in its nature the ground of reversal was not separable or several, and the reversal was in fact entire and unqualified. This court held that the appointment of the substituted trustee was void, and, if void, of course the sale by him was void. The appellant was treated as dead, and not represented on the appeal to this court, or on the hearing before the commissioners after the case was remanded. She was not required by the decree to pay any part of the $1,300 charged as a lien on the land set out in the bill. Throughout all these proceedings she was treated as dead.

Appellee bought from John and Patrick Coffin, at private sale, for $1,500, instead of buying at a sale made under the decree, or buying the decree, and having it assigned to himself. As we understand the bill, it is alleged on information and belief that $1,300 were paid to Elizabeth Murphy to satisfy the decree, she, in consideration of such payment, conveying the property to John and Patrick Coffin. Fifty dollars were paid

to the commissioners, and the court costs out of the remaining $200, and the remainder of the $200 was paid to the solicitors for the defendants in that case, as their fee against the heirs of John Coffin, deceased.

But it is not shown, as pretended, that appellant was a party to said purchase and sale, nor that the attorneys represented her in any way, directly or indirectly; nor that she received a dollar from the sale. It was simply and purely a private sale by the two Coffins to appellee.

We do not think any such laches are averred, under all the circumstances, as estops appellant. There is no affirmative fraudulent conduct of the minor averred. There is no allegation of anything which ought reasonably to have had the effect of misleading the appellee. It was easy for him to have ascertained the true state of the case by the exercise of the most ordinary care.

All that is said as to the law of subrogation is unavailing, because of the facts averred in the bill. It appears that the appellee never bought under the decree, never bought the decree, never paid off the decree, but just simply bought the property at private sale from the two brothers for $1,500, and they satisfied and discharged the decree long prior to the institution of this suit, in accordance with the terms of the decree directing them to satisfy it. That decree was not against this appellant. She was under no duty to pay it, or any part of it, and appellee, as to her, is a pure volunteer. He was no party to the suit—there was no decree against him. He had no lien on or interest in the property prior to his purchase, and he was under no sort of obligation to pay off this decree. It seems evident enough that he bought supposing the Coffin brothers to be the sole owners, which error he would have escaped by the exercise of reasonable prudence and inquiry. The fact that he paid full value and bought in good faith cannot supply the lack of title in the two brothers, grantors, to appellant's third interest in the property. That title can be divested only by due process

of law. Even could appellee invoke subrogation, he could be subrogated to no greater rights than the Murphys had, and they had none against this appellant—no party to the decree. There is no possible room in the case made by the bill for the play of the doctrine of subrogation.

If the appellee be a purchaser in good faith entitled to recover for valuable, permanent, not ornamental, improvement, that relief can be fully afforded him in the ejectment suit at law.

*The decree is reversed, the demurrer sustained, and the bill dismissed.*