# BRUNT *et al. v.* MCLAURIN.

(Division A.   Feb. 8, 1937.   Suggestion of Error Overruled Mar. 8, 1937.)

[172 So. 309.   No. 32546.]

W. U. Corley, of Collins, for appellant.

McIntosh & McIntosh, of Collins, for appellee and cross-appellant.

**McGowen, J.,** delivered the opinion of the court.

Mrs. Vera Thurman, Mrs. Ena Stewart, a minor by next friend, and Wallace Brunt, exhibited their bill of complaint against W. I. McLaurin, O. B. McQueen, W. J. and Tressie Brunt, and the Ætna Insurance Company, to recover an undivided interest in land situated in the town of Collins, basing their title thereto on the fact that they are the heirs at law of their deceased mother, in whom was vested a one-half interest in this land. Hattie E. Brunt, the mother of these complainants, died in 1918, and these three children, with their father, W. J. Brunt, inherited the interest of said Hattie E. Brunt in this land. The bill further alleges that, after the death of the complainants' mother, their father, in conjunction with his second wife, Tressie Brunt, executed a deed of trust on said land to the Jackson Building & Loan Association, and subsequently thereafter, in 1929, conveyed the land, by warranty deed, to O. B. McQueen. They alleged that, while McQueen was in possession of the land under the deed from their father and stepmother, the house situated on the land was destroyed by fire; that an insurance policy had been taken out by McQueen with the Ætna Insurance Company for $1,100, and this insurance was wrongfully paid to McQueen; and that said insurance should inure to the benefit of these complaining tenants in common. The bill prayed for partition, since the land could not be divided in kind.

McLaurin filed his answer, admitting that the minors each owned a one-eighth interest in the lot, and the state of the title. By way of cross-bill, however, he sought to recover from the remote vendors, W. J. and Tressie Brunt, the consideration paid by McQueen for the lot.

In the court below, the bill was dismissed as to the Ætna Insurance Company and O. B. McQueen, without

objection by McLaurin, although he had made McQueen a party to his cross-bill. The court below filed a written finding of facts, and thereon a decree was entered adjudging that McLaurin and the three children were tenants in common of the lot, McLaurin owning five-eighths, and each of the children owning a one-eighth interest therein, and ordered a sale of the lot for partition, appointing a commissioner for that purpose. The court further found, on the cross-bill, that McLaurin should recover from the remote vendors, W. J. and Tressie Brunt, three-eighths of $1,750, the consideration paid by McQueen for the lot or $656.25, with lawful interest thereon from the date of the deed to McQueen, and impressed a lien on the house and lot which McQueen had conveyed to W. J. Brunt as part of the consideration for the lot in controversy, and directed a sale of this house and lot, by the commissioner, to discharge that lien.

The record facts disclosed are that, in 1916, one Kervin conveyed the lot in controversy to W. J. and Hattie E. Brunt, his wife. In 1928 W. J. Brunt, and his second wife, Tressie, gave a deed of trust to the building and loan association for an excess of $1,100, and some years later they conveyed, by warranty deed, to O. B. McQueen the lot in controversy, the consideration being the assumption by McQueen of the $1,100 deed of trust in favor of the building and loan association, and the conveyance to the Brunts by McQueen of a house and lot owned by him. Mrs. Hattie E. Brunt, the mother of the children, as stated, died in 1918, leaving as heirs her husband, W. J. Brunt, and the three minor children, and the title to a one-half interest in the lot in controversy was vested in the husband and children in equal shares. The Brunt children never did join in any deed. In 1928 W. J. and Tressie Brunt, his second wife, gave the deed of trust noted above, and thereafter, when this became due, they made the exchange

above referred to. As stated, while McQueen was in possesion of the lot, the house was destroyed by fire. McQueen had made payments of $20 a month for three years to the building and loan association when he collected the insurance, and with it he paid the balance due thereon; did not rebuild the house; and later conveyed the lot, without improvements, to W. I. McLaurin.

There was evidence tending to show that McQueen paid for this house and lot $1,750; to the building and loan association $1,100 to discharge the deed of trust thereon; and that $850 was a fair value of the house and lot which he had conveyed to the Brunts. The Brunts had assumed to pay, and did pay, a lien of $195 which existed on the house and lot conveyed to them by McQueen as a part of the consideration for the lot in controversy.

The chancellor allowed three-eighths of $1,750 as damages to McLaurin for a breach of warranty in the deed from the Brunts to McQueen, and found, and there is no dispute concerning same in the record, that McQueen and McLaurin were purchasers, in good faith, without any actual knowledge, other than the records of Covington county, and believing honestly that they were the absolute owners of the title.

1. We do not think we are warranted in disturbing the finding of facts of the court below. Counsel for W. J. Brunt complains of the finding, but it is based on the only convincing evidence in the record. Of course, neither Brunt nor his children were entitled to share in the proceeds of the insurance policy taken out and paid for by McQueen, when neither he nor the insurance company knew that the children of Brunt had any claim to the land. As a matter of fact, they relied upon an abstract written by an abstractor who failed to distinguish the difference between the names "Hattie" and "Tressie," the two wives of W. J. Brunt.

However, in his cross-bill, McLaurin fixed his damages at $500, and his counsel agrees that the judgment against Brunt be reduced from $556.25 to $500, with 6 per cent. interest as allowed by the court below. This modification of the decree of the court below on the cross-bill will be made.

The appellant W. J. Brunt urges that it is unjust and unlawful to allow McLaurin to recover for a breach of covenant in Brunt's deed to McQueen. When McQueen executed a warranty deed to McLaurin, he thereby assigned his (McQueen's) claim to McLaurin for a breach of the covenants on the part of Brunt. The court found that McQueen paid Brunt $1,750, and that to the extent of a three-eighths interest in the land the title had failed.

The rule controlling here is announced in the case of Brooks v. Black, 68 Miss. 161, 8 So. 332, 335, 11 L. R. A. 176, 24 Am. St. Rep. 259, as follows: "The measure of damages on a total failure of title, even on the covenant of warranty, is the value of the land at the execution of the deed; and the evidence of that value is the consideration money, with interest and costs." The court there definitely determined the question of remote vendees by saying: "When we come however to the precise question now presented, which is whether a remote vendee may recover from the remote vendor the purchase money paid by the first vendee, or is limited to the amount paid by himself to his vendee, we find direct conflict in the decisions, and, so far as we have found the cases, they are nearly equal in number on each side." The court thus answered this query: "We are unable to perceive any principle upon which this obligation shall be diminished because of the price, in consideration of which it may be assigned. We therefore conclude that the obligation of the covenantor is the same to the assignee that it was to the covenantee, and, being such, is governed by the same measure of damages."

2. There is no merit in the contention that after the court had determined, and all the parties had agreed, that this title had failed, that Equity could not grant relief because there had been no actual eviction. This question is at rest in this state. Equity has jurisdiction in cases of this kind. The court adjudged that the title of Brunt's children was superior, and that there had been a breach of the covenant. Middleton v. Howell, 127 Miss. 880, 90 So. 725; Cranford v. State ex rel. Knox, Atty. Gen., 159 Miss. 32, 131 So. 638; and 21 C. J. 198, section 187.

3. All the parties hereto consented, in open court, that the case might be dismissed against McQueen, and none of them objected to that action.

On the cross-bill, we are of the opinion that the court below erred in directing a sale of the house erected by McLaurin on the lot in controversy, and in permitting the Brunt children to share a one-eighth interest in the house.

McLaurin, while in exclusive possession of the property in question, honestly believed himself to be the owner of the absolute fee, and, in good faith, erected a house thereon. There is nothing in this record to suggest that any of the parties hereto suspected, or had reason to suspect, that there was a defect in the title, and absolute good faith is shown unless McQueen and McLaurin are not permitted to assert good faith because of our recordation statute, section 2146, Code 1930.

Hattie E. Brunt's deed was duly recorded prior to the attempted conveyance of her interest by W. J. and Tressie Brunt. Under the statute, supra, that recorded deed was constructive notice of Hattie E. Brunt's title to a one-half interest in the lot. If this constructive notice suffices to impeach good faith, then section 1474, Code 1930, is practically without enforceable effect. This section allows a defendant to claim valuable improvements with this qualifying statement, ''but a defendant

shall not be entitled to such compensation for improvements or taxes unless he claim the premises under some deed or contract of purchase acquired or made in good faith.''

Cole v. Johnson, 53 Miss. 94, settled that question by holding that, under the circumstances here, a party who purchases property and puts valuable improvements thereon, believing himself to be the owner, and thereafter his title fails, may have set aside to him the class of improvements so made to the extent that the same enhanced the value of the whole property. The court there said: ''Our view is, that, in order to deprive the occupant of land under color of title of the value of the permanent improvements erected thereon, there must be brought home to him either knowledge of an outstanding paramount title, or some circumstance from which the court or jury may fairly infer that he had cause to suspect the invalidity of his own title, but that this cannot be inferred merely because it could have been demonstrated by the records of the county. . . . So far as the payment of the money is concerned, it seems quite manifest that all that is meant by the requirement of good faith is, that it shall have been genuinely paid, without any knowledge or suspicion of fraud either on the part of the purchaser or of the administrator. The term is used in contradistinction to bad faith, and not in the technical sense in which it is applied to conveyances of title, in which latter sense a party wholly free from moral mala fides is still frequently held not to be a bona fide purchaser.'' See, also, Emrich v. Ireland, 55 Miss. 390; Citizens' Bank v. Costanera, 62 Miss. 825; Demourelle v. Piazza, 77 Miss. 433, 27 So. 623; Gaines v. Kennedy, 53 Miss. 103; Walker v. Williams, 84 Miss. 392, 36 So. 450; Bennett v. Bennett, 84 Miss. 493, 36 So. 452; Butler v. Furr, 168 Miss. 884, 152 So. 277; and especially Reed v. Henson, 158 Miss. 224, 130 So. 108.

The general rule is stated in 1 A. L. R., pp. 1202 and 1203, Editor's note.

The court below, in the case at bar, should find and allot to McLaurin the value of the improvements in such amount as the entire lot is enhanced by the erection of the house thereon as of the date of the decree.

The decree is affirmed with the modification, or remittitur, on the direct appeal, and reversed and remanded as to McLaurin's appeal. .

Affirmed in part and reversed and remanded on Mc-Laurin's appeal.