LOUISE M. INDRA, Appellant, v. J. H. WIGGINS et ux., Appellees.

JAMES H. WIGGINS, Appellee, v. LOUISE M. WIGGINS, Appellant.

No. 47001.

JULY 29, 1947.

730

Geo. C. Claassen, of Cedar Rapids, for appellant.

Jordan & Jordan, of Cedar Rapids, for appellees and cross-appellant.

Bliss, J.— ██ As the appeal is presented the chief complaint of the plaintiff against the decree of the court is that it charges her share in the joint property with one half of the enhanced value thereof, which increase in value was found by the court to have resulted from improvements placed on the ground and paid for by the defendant J. H. Wiggins. Her contention is that, although she contributed nothing to any improvement placed on the bare acre of ground, the value of which

at all times pertinent was but $150, she is, nevertheless, entitled to one half of the value in excess thereof, all of which resulted from defendants' improvements. On March 5, 1946, Mr. and Mrs. J. H. Wiggins sold this property by written contract for $8,250. By agreement of the parties the purchasers are to pay the purchase price to a referee appointed by the court as soon as an abstract showing good title and the referee's deed are furnished. Plaintiff does not question that the enhanced value, as evidenced by the sale price, was due to the improvements. The able trial court found that the claim, so vigorously pressed by the plaintiff, "as a matter of equity and fairness * * * entirely lacks foundation." We agree fully in this finding and conclusion.

Louise M. Indra, a maiden of twenty-eight years, and James H. Wiggins, a boy of about twenty, were married in 1938. She had been working in Cedar Rapids, and he was living with his parents on a farm about two miles north of Marion, in Linn county. For two or more years they lived in an apartment in Marion. No issue was born to them and they adopted a little boy. They desired a home of their own. Louise had saved about $1,000 from her premarriage earnings, and sometime after the marriage her father, John F. Indra, gave her $1,000. The father of James owned a forty-acre timber pasture just across the road from his parental home. On June 17, 1941, the parents of James went to a lawyer in Cedar Rapids and executed a warranty deed, there prepared, conveying to J. H. Wiggins and Louise M. Wiggins, husband and wife, as joint tenants and not as tenants in common, with right of survivorship, an acre of ground out of said forty-acre tract. The recited consideration was $1 and other valuable consideration. The lawyer had the deed recorded and then placed it in an envelope and mailed it or handed it to James. He paid little attention to the deed and thought it conveyed title to himself only. He took it directly to the building and loan association without knowing or understanding that the deed was to him and his wife as joint tenants. He never knew this until he was so informed by a letter he received from plaintiff's attorney herein on September 22, 1944. Louise never had seen the deed.

Sometime after receiving the deed from the scrivener, James negotiated a loan of $2,000 with the Linn County Building and Loan Association of Marion, and he and Louise executed their note therefor, and secured its payment by their mortgage on the acre of ground. The date of this does not appear. He entered into a contract with a builder for the construction of the house. From her savings before marriage she contributed toward the building $1,900. The contract price was $4,075, but, as usually happens, there were extras and the cost overran the contract price. The contractor had not allowed for a stairway to the second story and the extra cost therefor was between three and four hundred dollars. James dug the basement and a trench for about three hundred feet for piping water. He also dug a sewer ditch from the house to the toilet, a distance of about one hundred fifty feet. He painted the house outside and inside and finished the floors. The house was built of the best material and modern in every way. There was a full basement and two floors above. The house was heated with a furnace and lighted with electricity. Some of the rooms in the second story were not fully finished. This was also true of the basement. The improvements at that time fairly represented an outlay in money and his labor approximating $5,000. The home was comfortably furnished. From his earnings he had reduced the mortgage to about $1,400. What his work was does not appear, except his name on a letterhead indicates his association with another in the dairy business.

But marital discord entered the home. What its cause was and when it arose is not disclosed in the record. They talked together about divorce. He consulted Charles J. Haas, a lawyer of Marion, formerly on the bench of the Eighteenth Judicial District of Iowa, whom the trial court spoke of as "a highly skilled and meticulous lawyer." She talked with a friend, but whether he was a lawyer does not appear. She employed no lawyer but consulted four or five times with Judge Haas. Usually one or both of her married sisters or her father was present at these conferences, and once or twice her husband was present. She brought to Judge Haas a written itemized

statement showing the furniture and household furnishings which she wished. Apparently she received a fair share thereof. In this statement were the items: "Louise's cash investment in house," and "$500 cash settlement." The matter of the house and lot was never discussed at these conferences, because Judge Haas had asked James about the title and he had told him the deed was to him. Louise never told the judge anything different, and when he prepared the property settlement stipulation, and the divorce decree, no mention was made of the real estate. James H. Wiggins was the plaintiff in the suit. Louise signed a written appearance and waiver of notice and time of hearing. The stipulation, signed by both parties on February 21, 1944, stated: "* * * the property rights of the parties and the custody of the adopted child * * * [are] hereby settled and agreed upon as follows * * *." It provided that within ten days after decree James was to pay $2,403, "in full of all claims for alimony, money advanced, and for any and all claims of whatsoever kind and character that the said Louise has or claims to have against the said James." The personal property was listed. The custody of the adopted boy was given to James. Judge Haas testified that the $2,403 was made up of the $500 cash alimony item and $1,903 was to reimburse Louise for the money she had furnished toward the house-building expense. The judge also testified that before drawing the stipulation he asked Louise if it was to settle everything and all matters that were between them, and she replied that it did. He told her that James had no ready money and could raise the $2,403 to pay her only by placing a mortgage on the residence, and that it would be better if the decree of divorce was first procured, and then she would not have to sign the mortgage papers and James could execute the mortgage on the house and lot, which would require about ten days. Louise agreed to this and never mentioned anything about her having an interest in the home. She testified that she never knew that her name was in the deed or that she had any interest in the property. The decree of divorce was rendered on March 17, 1944. It decreed that James H. Wiggins had established the allegations of his petition and was entitled to the divorce.

The stipulation was made a part of the decree by reference. The decree recited that:

"Except as provided in this decree, neither of the parties shall hereafter have any interest in the property of the other."

On the day the decree was granted Judge Haas sent Louise a certified copy of it and told her that James would have to execute a mortgage and have the abstract of title extended to show the decree and that he would notify her when she could get her money at the clerk's office. To procure the money, James, on March 28, 1944, executed to the Linn County Building and Loan Association his note for $3,000 secured by his mortgage on this residence property. This satisfied the $1,400 owing on the old mortgage, and left him $1,600 to apply on the $2,403 owing Louise. He borrowed enough of his father to settle in full with her.

Louise moved out of his home and took with her all of her possessions therein as soon as the decree was granted. He remained in the home, and, on August 7, 1944, he married the second Mrs. Wiggins. She had money of her own which she placed in a joint account with him. Out of this fund, on September 2, 1944, he paid $2,906.32 to satisfy the balance owing on the mortgage of $3,000. After the second marriage the house was completed by finishing the upstairs and basement and putting a recreation room in the latter. The grounds were landscaped and fenced, and a chicken house was built. The house was carpeted downstairs at an expense of $398.13. Awnings were put on the house. These carpets and awnings went with the property when it was sold. These improvements were paid by checks on the joint account amounting to approximately $1,500.

The original outlay for the house and the later additions made the total cost of the improvements on the ground approximately $6,500. Louise paid no part of this. What she had paid on the original contract price had been returned to her. The entire cost of the improvements had been paid for by James. Plaintiff in argument seeks to make something of

the fact that James procured some of the money from the second Mrs. Wiggins. That fact does not aid the plaintiff. James procured the money to make the improvements and the source thereof is immaterial. Plaintiff has no more right to unjustly enrich herself from the property of Mrs. Wiggins than she has to do so from the property of Mr. Wiggins.

The improvements made were of a substantial and lasting character. They were necessary and proper to make the home a better and more habitable place to live in. They were not a special or peculiar benefit to the improver alone but were of a kind and character as would be a benefit and advantage to any owner or occupant of the premises. They added to the market value of the property.

All of the improvements were made in good faith and in the honest belief of Mr. Wiggins that he was the sole owner in fee of the property. He had never examined the deed since he received it, except to hastily look at it when he took it to the loan company. If he did read it the term ''joint tenancy'' probably meant little to him. He thought that the decree of divorce divested his wife of all title and interest in the property and that it was his to do with as he pleased. Louise had asked for the return of all of the money she had put into the property. He gave it to her and thought that he was settling with her for such interest as she had. Judge Haas thought that the divorce settlement and decree was a dissolution of all title and interest that Louise had in both the residence and its contents. It is not surprising that James thought so. The evidence, the legitimate inferences therefrom, and the conduct of Louise all indicate that is what she thought also. She testified that for some reason she and a sister, in August or September 1944, looked up the record of the deed in the county recorder's office and learned of her joint ownership.

Her testimony is equivocal and contradictory, and it, and much of the testimony in her behalf, is not convincing.

The trial court saw and heard the parties and the witnesses, and in its opinion and ruling said:

''The entire course of dealings between these parties leads this Court to the certain belief that the facts are as detailed

by Wiggins. If either or both parties thought that the ownership of the real estate was joint the matter would certainly have been raised during their negotiations over the settlement of their property rights. Judge Haas * * * would never have left the matter in its unsettled and · uncertain condition had either party ever suggested to him that there was any question of joint ownership of the realty. The attitude of both parties is strongly indicative of the fact that each considered that the realty was the sole property of Wiggins. Defendant's [plaintiff's] insistence upon repayment to her of the sum of something over nineteen hundred dollars which she had advanced for the building of the house, is further evidence that she expected no further claim upon or right to the property.''

The court, among other facts, found:

''1. That the stipulation of settlement in the divorce case was intended to settle all rights of the parties with reference to their joint property, but is silent as to any division of the real estate, except that it refers to money advanced by the defendant [plaintiff] Louise M. Wiggins, which money the Court finds * * * was advanced by her for the purpose of aiding in the construction of the house involved herein, and which was repaid to her.

''2. That the said·Louise M. Wiggins, at or very shortly prior to the granting of the decree, removed from said house, and made no claim for any interest therein until about six months afterwards. * * *

''4. That James H. Wiggins, although in possession of said deed, in good faith believed at all times, until about September 22, 1944; that it conveyed to him full title.

''5. That the reasonable value of said lot unimproved is the sum of $200.

''6. That the reasonable value of the lot as now improved with the house, is the sum of $8,250.

''7. That James H. Wiggins, during the period of the co-tenancy, has made improvements upon the said unimproved lot, which has enhanced its value in the sum of $8,050. * * *

''12. That no communications or discussions were had be-

tween James H. Wiggins and Louise M. Wiggins prior to the execution of the stipulation of settlement in the divorce case, concerning the ownership of the real estate, and that this was for the reason that each of them then believed the said James H. Wiggins to be the full owner of said real estate.''

Although the belief and opinion of the trial court was as it expressed itself above, its conclusion was that the erroneous belief of James and Louise Wiggins and of Judge Haas could not obviate the fact that the deed did vest title in the grantees as joint tenants. It therefore declined to attempt to nullify this fact by any modification of the decree of divorce. But the fact that the title to the lot rested in the grantees as joint tenants does not impeach the good faith or honesty of James H. Wiggins in believing and acting to the contrary. Wiggins at all times believed he was the sole owner of the lot and so alleged and testified in the trial below. The trial court rightly held that he and the plaintiff were joint tenants, but that holding does not aid the plaintiff, nor does it deprive the defendant of the benefit of the well-recognized principles of equity jurisprudence which rule this case.

In its ''Conclusions of Law'' the court stated:

''2. Where one cotenant improves the real estate, in a partition action, the improving cotenant will be allowed such amount as the improvements enhanced the value of the property * * *.

''3. The cotenant in possession must account to the other cotenant for the reasonable rental value of the property.

''4. * * * the improvements added by the cotenant will not be considered in determining [the] reasonable rental value.''

I. The first conclusion of law of the trial court stated above expresses an ancient principle of equity jurisprudence which has been consistently adhered to in partition suits since courts of chancery in England took exclusive jurisdiction of such actions. The courts and authorities in this country have enforced the principle since Colonial days. Story expressed it thus:

"So where one tenant in common, supposing himself to be legally entitled to the whole premises, has erected valuable buildings thereon, he will be entitled to an equitable partition of the premises, so as to give him the benefit of his improvements; or, if that cannot be done, he will be entitled to a compensation for those improvements." 1 Story's Equity Jurisprudence, Fourth Ed., sections 655, 656.

As stated by the annotator in 1 A. L. R. 1190:

"The reason of the rule allowing compensation to the improving tenant in common is that when his improvements enhance the value of the common estate, and his cotenants are not injured in any way or hindered from having partition, they should not be permitted to take advantage of improvements which enrich the common property, and to which they have contributed nothing." Citing Helmken v. Meyer, 138 Ga. 457, 75 S. E. 586, 45 L. R. A., N. S., 738.

It is essential to the allowance of such compensation that the improvement adds to the value of the property at the time of the partition. The improvement must not be a foolish or an improvident one, or merely to meet the whim or caprice of the improver. The right to compensation and the extent of the allowance are determined by the resulting increase and enhancement in the value of the property.

It has been expressed thus by the Texas Court of Civil Appeals, in Spicer v. Henderson, 43 S. W. 27, 29:

"The right of one tenant to claim the value of improvements * * * is founded upon his right in the land, and the extent of the allowance is measured by the extent of benefit derived therefrom in the partition by his cotenant. To the extent only that the value of the land received in partition by such cotenant is enhanced by the improvements placed thereon is he bound to reimburse the tenant making the improvements."

The cost or price of an improvement or the original amount expended in making it is not a controlling factor in determining the proper compensatory award, because, as has been said,

another cotenant might be "built out of" his share in the property by the extravagant and unsound investment of the cotenant in possession or the utility of the improvement exhausted or its value depreciated at the time of the partition. As the cost of the improvement may not correctly measure the added valuation because of its depreciation, it also may not be a proper criterion, because the improvement may result in an appreciation in value in excess of amount expended. Such an increase of value may be caused by a rise in the cost of labor and materials.

Another requisite in the allowance for improvements is the good faith and the honest intentions of the improver. An often-cited and much-quoted definition of the term "good faith," as used in the matter under consideration, is found in Hall v. Piddock, 21 N. J. Eq. 311, 314, to wit:

"The only good faith required in such improvements is that they should be made honestly for the purpose of improving the property, and not for embarrassing his co-tenants, or encumbering their estate, or hindering partition. And the fact that the tenant making such improvements knows that an undivided share in the land is held by another, is no bar to equitable partition."

The element of good faith is an important factor in the consideration of a court of equity. For it will apply the principle of awarding compensation for beneficial improvements not only in cotenancy but to any person who honestly and in good faith, but by excusable mistake, improves the land of another, thinking that it is his own. In the case of Whitledge v. Wait's Heir, 1804, Sneed (Ky.) 335, 336, 2 Am. Dec. 721, 722, a bona fide occupant of land—not a cotenant—believing himself the owner, was held entitled to be paid the enhanced value of the land because of his improvements, by the evicting owner. The court said:

"The principle that 'no person ought to profit by another's loss,' is peculiarly applicable to this case, where the possessor of a subject, which he *bona fide* considers to be his own, bestows

his money and labor on reparations and ameliorations; the proprietor claims the subject and prevails; he profits by the meliorations, and the money and labor bestowed thereon are converted to his use. Equity requires that the *bona fide* possessor should be reimbursed. * * * Lord Kaimes, in his Principles of Equity, page 106, states that 'the titles of landed property being intricate and often uncertain, instances are frequent, where a man, in possession of land, the property of another, is led by unavoidable error to consider it as belonging to himself; his money is bestowed without hesitation on repairing and meliorating the subject. Equity will not permit the owner to profit by such mistake, and in effect to pocket the money of the innocent possessor; he will be compelled by a court of equity to make up the loss, as far as he is richer.' "

Another factor akin to that of good faith is the matter of the knowledge or consent of other cotenants with respect to the improvements. Of course, ordinarily, one cotenant cannot voluntarily improve the common property, and then by direct action, particularly at common law, compel another cotenant to contribute his proportionate share thereof. He cannot thus make another cotenant his debtor against his will, or thereby subject the share of that cotenant to a charge or a lien therefor. Many decisions hold that this cannot be done, with respect to even necessary repairs, unless there has been a request and a refusal of the cotenant to participate. See Mumford v. Brown, 6 Cowen (N. Y.) 475, 16 Am. Dec. 440; Taylor v. Baldwin, 10 Barb. (N. Y.) 582, 590; Doane v. Badger, 12 Mass. *65 [reprint, 68]; Calvert v. Aldrich, 99 Mass. 74, 77, 96 Am. Dec. 693–697; Crest v. Jack, 3 Watts (Pa.) 238, 27 Am. Dec. 353, 354, 355; Kidder v. Rixford, 16 Vt. 169, 42 Am. Dec. 504, 506, 507 (though it is otherwise under the civil law, Percy v. Millaudon, 6 Mart. (La.), N. S., 616, 17 Am. Dec. 196); Cooper v. Brown, 143 Iowa 482, 487–492, 122 N. W. 144, 136 Am. St. Rep. 768; Shelangowski v. Schrack, 162 Iowa 176, 180–182, 143 N. W. 1081.

But the rule stated just above has no application in the case before us, or in any case where the question of the allow-

ance of compensation for repairs or improvement on property held in joint tenancy or tenancy in common arises in *partition* or accounting, *in equity*. The argument and citation of authorities by counsel for appellant indicate an avoidance of this distinction. The distinction is recognized in Shelangowski v. Schrack, supra, 162 Iowa 176, 180, 181, 143 N. W. 1081, and in other decisions of this court which we will refer to.

The general principle is stated as follows in 21 Am. & Eng. Ency. of Law, Second Ed., Partition, 1170:

"A court of equity, in decreeing a partition, does not act ministerially, and in obedience to the call of those parties who have a right to the partition, but bases its action upon the general jurisdiction given to courts of equity. It will, therefore, on a bill for partition, adjust the equitable rights of all the parties interested in the estate so far as they relate to and grow out of the relation of the parties to the common property."

In 1 A. L. R. 1189 (see, also, pages to 1225), it is stated:

"While at common law a tenant in common could not claim contribution in an action at law for necessary improvements made on the common property, without the consent of his cotenant, nevertheless, inasmuch as an action for partition was essentially equitable in its nature, a court of equity was required to take improvements into account when decreeing partition, and to award to the cotenant in possession, who had necessarily and in good faith improved the common property and enhanced its value at his own cost, such equitable compensation as would leave only the value of the estate, without the improvements, to be divided among the tenants in common. This relief was granted in actions in partition, in keeping with the familiar principle of equity jurisprudence, which requires that one who seeks equity must do equity. The rule in this behalf has been adopted and applied, with but rare exceptions, in every jurisdiction where the action for partition is considered as one calling for equitable interposition and relief."

A like statement appears in 40 Am. Jur., Partition, section 39, and section 44.

The question of compensation for improvements in partition suits in equity is fully discussed in the footnotes to Robinson v. McDonald, 11 Tex. 385, 62 Am. Dec. 480, 482–487, where the annotator, on page 486, states:

"But the general rule undoubtedly is that an assent on the part of the co-tenants need not be shown, nor is it necessary to show a previous request and refusal: Freeman on Cotenancy and Partition, sec. 510; Green v. Putnam, 1 Barb. 500; Martindale v. Alexander, 26 Ind. [104], 105 [89 Am. Dec. 458–460]; Drennan v. Walker, 21 Ark. 539; Hall v. Piddock, 21 N. J. Eq. 311. A correct summary of the law, we conceive, on this subject, is that made by the supreme court of New York in Green v. Putnam, 1 Barb. 500: 'Where one tenant in common lays out money in improvements on the estate, although the money so expended does not, in strictness, constitute a lien on the estate, yet a court of equity will not grant a partition without first directing an account[ing] and a suitable compensation; or else in the partition it will assign to such tenant in common that part of the premises on which the improvements have been made. To entitle the tenant in common to an allowance on a partition in equity, for the improvements made on the premises, it does not appear to be necessary for him to show the assent of his co-tenants to such improvements, or a promise on their part to contribute their share of the expense; nor is it necessary for them to show a previous request to join in the improvements, and a refusal.' "

See like statement in 1 A. L. R. 1218, and supporting decisions, and page 1200 of said volume, where it is stated:

"The equity of a cotenant to have the part of the common property which he has improved allotted to him on a partition is not founded on the idea that he made the improvements with the consent, express or implied, of his cotenants. * * * But, having a right, as a tenant in common, to improve the property without the consent and against the will of his cotenant, and not having a lien on it for his improvements, he can be indemnified therefor, only in a partition in equity." (Citing cases.)

In Mastin v. Mastin's Admr., 243 Ky. 830, 836, 50 S. W. 2d 77, 79, the court said:

"Where the common property has been improved by one cotenant, if in an action for partition the common property is not susceptible of a division, the improver on a division of the proceeds of a sale thereof, should be allowed the enhanced value of the whole by reason of the improvements, and not the cost of his improvements, whether the improvements were made with or without the consent of the other cotenant, tenant in common, or coparcener." (Citing cases.)

In Dalgarno v. Baum, 182 Va. 806, 30 S. E. 2d 559, the court held that generally, under equitable rule against unjust enrichment, a joint tenant who at his own expense places permanent improvements upon common property is entitled in a partition suit to compensation for improvements whether cotenants assented thereto or not.

In Brunt v. McLaurin, 178 Miss. 86, 172 So. 309, it was held that one who improved a property in the honest belief that he owned it was not barred from reimbursement out of the proceeds of a partition sale because there was a duly recorded deed indicating the existence of the claim of another to an undivided interest in the property. In Carver v. Coffman, 109 Ind. 547, 10 N. E. 567, 569, the court held that while the law will not ordinarily compel one cotenant to pay for improvements made in good faith, but without his authorization, yet it will not allow him to take advantage of improvements for which he has contributed nothing. This holding was followed in Jackson v. Wilson, 87 Ind. App. 636, 158 N. E. 922, 161 N. E. 829 (rehearing denied). For other decisions allowing compensation for improvements where no knowledge or consent on the part of other cotenants was shown, see Carson v. Broady, 56 Neb. 648, 77 N. W. 80, 82, 71 Am. St. Rep. 691; Hayes v. Davis, 307 Ill. App. 440, 30 N. E. 2d 521; Kubina v. Nichols, 241 Wis. 644, 6 N. W. 2d 657–659. In the last-cited case one cotenant had paid the taxes on her share in the common property and procured a tax deed to the shares of the other cotenants. She then sold the property for $600 to Kubina, who

built a garage on the lot at a cost of $6,000, which improvement enhanced the value of the property by the amount of such cost. The value of the lot, without the improvement, remained at $600. He mortgaged the property for $2,500. Everything he did with respect to the property was in the good-faith belief that he had an absolute title in fee simple. About three or four years later two of the cotenants procured a judgment setting aside the tax deed against them. One of them, Nichols, then bought out the other cotenants and brought this suit in partition. He had no knowledge of the making of the improvements, and they were made without his consent or authorization in any way. The court, following two of its decisions, Deery v. McClintock, 31 Wis. 195, and Scheiner v. Arnold, 142 Wis. 564, 126 N. W. 17, and the general rule stated in 40 Am. Jur., Partition, section 39, held that the undivided interest of Nichols in the property was charged with its proportionate share of the $6,000 enhancement in value which the improvement had added to the property. Nichols, a layman, who tried his case in the lower court and presented his appeal in the Wisconsin Supreme Court, was denied a writ of certiorari in the United States Supreme Court. (Nichols v. Kubina, 318 U. S. 784, 63 S. Ct. 852, 87 L. Ed. 1151.)

Other additional authorities and decisions dealing with the matter of compensation for improvements made by a cotenant, and sustaining the trial court's conclusion of law that the improving cotenant should be allowed from the proceeds of the partition sale such amount, in addition to his pro rata share in the property, as the improvements enhanced the value of the property at the time of the partition trial, are: 16 Am. & Eng. Ency. of Law, Second Ed., Improvements, 111 et seq.; 14 Am. Jur., Cotenancy, section 49; annotation 122 A. L. R. 234–249; 40 Am. Jur., Partition, sections 43–51; 7 Am. & Eng. Ency. of Law, Second Ed., Contribution and Exoneration, 358; 62 C. J., Tenancy in Common, section 122; 47 C. J., Partition, sections 497, 505, 507–509, 855; Wainscott v. McBroom, 203 Ky. 634, 262 S. W. 961, 962; Ratterman v. Apperson, 141 Ky. 821, 133 S. W. 1005, 1007, 1008; Cleveland v. Milner, 141 Tex.

120, 170 S. W. 2d 472, 476; Armor v. Frey, 253 Mo. 447, 161
S. W. 829, 838; Appeal of Kelsey, 113 Pa. 119, 57 Am. Rep.
444, 445; Howey v. Goings, 13 Ill. 95, 54 Am. Dec. 427; Lou-
valle v. Menard, 1 Gilman (Ill.) 39, 45, 41 Am. Dec. 161;
Burks v. Vaughn, Ark., 19 S. W. 754, 755; Ford v. Knapp,
102 N. Y. 135, 6 N. E. 283, 55 Am. Rep. 782–786; Buck, Heffle-
bower & Neer v. Martin, 21 S. C. 590, 53 Am. Rep. 702–706;
Clarke v. Clarke, 349 Ill. 642, 183 N. E. 13, 16; Chambers v.
Huntoon, 222 Ala. 482, 132 So. 713, 714; Sarbach v. Newell,
28 Kan. 642; id. 30 Kan. 102, 1 P. 30; Hermance v. Weisner, 228
Wis. 501, 279 N. W. 608, 610, 611, 117 A. L. R. 1437; Burton
v. Williams, Tex. Civ. App., 195 S. W. 2d 245, 247; Freeman
on Cotenancy and Partition, Second Ed., sections 509, 510.

This court has quite uniformly adhered to the general
principles relating to the subject matter as stated herein. It
has repeatedly recognized the principle that one who, in good
faith, has made improvements on land in which others have
an interest, thereby increasing the value of the land, is entitled
to be recompensed to the extent of that value in any partition
of the land. Without any analysis of these cases, we call atten-
tion to them with such brief comment as may be necessary:
Cooper v. Frederick, 4 (G. Greene) Iowa 403, 405, 406; Thorn
v. Thorn, 14 Iowa 49, 55, 56, 81 Am. Dec. 451; Forrest Milling
Co. v. Cedar Falls Mill Co., 103 Iowa 619, 632, 72 N. W. 1076;
Van Ormer v. Harley, 102 Iowa 150, 158–161, 71 N. W. 241;
Conrad & Ewinger v. Starr, 50 Iowa 470, 478, 479; Moy v.
Moy, 111 Iowa 161, 162–164, 82 N. W. 481; Booth v. Booth,
114 Iowa 78–80, 86 N. W. 51 (The principle above noted was
recognized but the evidence to establish the improvements was
insufficient.); Plant v. Tate, 114 Iowa 283, 285, 286, 86 N. W.
276 (Here, also, the principle was recognized but the evidence
of improvements was lacking.); Parkhill v. Doggett, 142 Iowa
534, 536, 119 N. W. 689 (The principle was recognized, and
the court also stated and held that, even though the improving
tenant was a disseisor, and his acts amounted to an ouster, "not-
withstanding this strict rule of law, a court of equity may con-
sider all of the circumstances and somewhat modify the rule in

the interests of justice, and this is what the trial court seems to have done in this case.'' As the opinion states, the issue was principally factual. The improving tenant was permitted to remove some inexpensive improvements, and the rental owing by him quite offset in value the remaining improvements.) ; Rippe v. Badger, 125 Iowa 725, 729, 101 N. W. 642, 643, 106 Am. St. Rep. 336 (The plaintiff was not allowed to recover for improvements, because he claimed nothing therefor either by pleading or argument. By way of dictum, the court said: ''* * * as we understand the record, he was a disseisor, and for that reason alone he is not entitled to contribution for the improvements.'') ; Frye v. Gullion, 143 Iowa 719, 728, 121 N. W. 563, 566, 21 Ann. Cas. 285 (Any claim that may have been made for credit or compensation for improvements lacked sufficient evidence to sustain it. Any consideration given the matter was apparently very slight. The opinion states: ''* * * there appears to have been no accounting or showing of the rents and profits received by him [claimant]. We can not assume that he put more into the land than he took out of it. Moreover, it is only in exceptional cases that a tenant in common can burden the title of his co-tenants by improvements erected or made on his own motion.'' The last sentence was random obiter unnecessary to a decision in the case. There is no decision that in a partition suit, in the adjustment of the equities, compensation cannot be allowed, under the principle contended for by appellee, for improvements made on the common property.) ; Shelangowski v. Schrack, 162 Iowa 176, 180, 181, 143 N. W. 1081, 1083 (Proof of any improvements made was questionable. Plaintiff was only a life tenant on part of the property, and as such could not charge the reversion with valuable improvements, and was required to make such repairs as were necessary to preserve the property. The opinion repeats the dictum in Frye v. Gullion, supra, but immediately concedes the principle contended for by appellee, by stating:

''In a proper case for partition, equity will often so distribute the property in kind as to give to the one making improvements that part of the land upon which the cotenant

placed the improvements; *but it will not make the claim for improvements a charge upon the whole property."*) (Italics supplied.)

The italicized statement is contrary to the prior decision of this court in Killmer v. Wuchner, 79 Iowa 722, 724–726, 45 N. W. 299, 300, 8 L. R. A. 289, 18 Am. St. Rep. 392, and the later decision in Nelson v. Pratt, 212 Iowa 441, 230 N. W. 324, 236 N. W. 386, and is contrary to authority and precedent generally, and has been repudiated by the two decisions last mentioned. In the Killmer case, supra, the facts and decision are in substance as follows: The suit was for partition. Plaintiff, prior to the suit, had sold the property by written contract to Beinke, whom he made a defendant. Plaintiff had made improvements on the land, and asked that they be allowed in any partition or sale of the land. Beinke alleged that he had made valuable improvements, and asked that any money awarded to plaintiff be paid into court so that an adjustment could be made by them. The other defendants, the two Wuchners, asked for partition, but alleged that their rights were not affected by the improvements, and that those made by Beinke were with knowledge of their rights and without their knowledge or consent. The court found that Beinke owned a life estate in the property and seventeen twenty-fifths of the fee, and that each of the two defendants-appellants owned four twenty-fifths of the fee, subject to the life estate. The father of the appellants died testate and devised the appellants' two-thirds of the land in fee, subject to an estate in the mother. By a decree of court the mother's estate was fixed as one-third in fee and a life estate in the other two-thirds. In 1862 plaintiff's grantor obtained from the stepfather of appellants, who was their guardian, a deed which purported to convey their interest in the land. The court said:

"It was insufficient as a conveyance, but the evidence satisfies us that it was received in good faith, and relied upon and treated as effectual to pass the title of appellants. In the year 1864, plaintiff's grantor acquired the interest devised to the mother, and in the year 1866 he executed to plaintiff a war-

ranty deed for the entire tract of land. Valuable improvements were made upon it, and there is no doubt that plaintiff occupied and treated the premises as his own until the year 1884, when he sold them to Beinke without any knowledge of appellants' claims. When that sale was made an investigation of the title led to a discovery of the claims of appellants. * * * neither had ever resided in Iowa. They did not know of their interest in the land, nor the improvements thereon, until about October, 1884. Beinke first learned of the defect in his title nine months after he had entered into the agreement of purchase, and, as we understand the record, after a large part, if not all, of the improvements had been made. Certainly, all of much value were made before there was any adjudication of his title. It is true, appellee could have ascertained the interests of appellants before making the improvements, but the improvements were made in good faith, and equal in value the worth of the land without them. When made, appellees were rightfully in possession of the land, and only did that which was proper to develop and make it productive. It was taken in a wild, uncultivated state, and by means of the improvements in question was fitted for residence, and made capable of yielding valuable profits. It cannot be partitioned, but must be sold, and the proceeds divided. Appellants have not been injured by the making of the improvements, and they have no just claim to any portion of their value. They will receive the same amount in value under the decree of the district court that they would have received had the improvements not been made, and with that they should be satisfied. Our conclusion is in harmony with the principles of equity, and is not without support of authorities. * * * Appellants ask a partition in this case, and for general equitable relief, and cannot be heard to complain because their prayer is granted. We are of the opinion that the finding of the district court as to the shares of appellants is sustained by the evidence, and is fair to them. The decree * * * is AFFIRMED."

In Bergman v. Kammlade, 109 Iowa 305, 80 N. W. 418, the rentals wrongfully withheld by the improving tenant ex-

ceeded in value what improvements he made. The same was true in Sagen & Nelson v. Gudmanson, 164 Iowa 440, 145 N. W. 954. In Berry v. Donald, 168 Iowa 744, 748, 749, 150 N. W. 1048, the cotenants, who had put valuable improvements on the common property, were allowed the full value and cost thereof in the partition suit. In Stevens v. Pels, 191 Iowa 176, 183, 194, 175 N. W. 303, a suit to award a widow her share of the land and to account for rentals was held by the court to be one in which the equities between the parties should be adjusted. A credit was awarded a grandson, for improvements he had put on the land, and charged against the common property, and not upon the share of the widow alone.

In Nelson v. Pratt, supra, 212 Iowa 441, 443–445, 230 N. W. 324, 325, a suit in partition in which the defendant cotenant asked that the value of improvements which he had placed on the land be awarded to him out of the proceeds of the sale, it was so decreed. His sister, the plaintiff, who owned the other half of the land as a tenant in common, appealed. Plaintiff and defendant were reversioners, and their mother had a life estate. Defendant, under an arrangement with his mother, who lived in North Dakota, went into the occupancy of the farm, and, because of the bad condition of the improvements, at his own expense, constructed improvements at a total cost of $6,000. These included a well-built house costing $4,600, and a barn, granary, corncrib, and complete fencing. It was not disputed that these improvements were worth in excess of $5,000 at the time of the trial and that they would add that much or more to the value of the farm. The decree awarded defendant $5,000 out of the proceeds of the sale.

In affirming, the court, through Evans, J., said:

"The basic proposition upon which appellant predicates her argument is that one co-tenant of land may not charge the other with contribution for the cost of improvements built upon his own motion without notice to the other co-tenant and without her knowledge or consent. The fact proposition contended for in argument is that the plaintiff was never notified by defendant of his proposed improvements and that she never,

either before or after the making, consented in any wise thereto. This line of argument may be safely conceded, yet it quite ignores the decisive equities in the case. It was competent for Pratt to rent the land from the life tenant. It was also competent for him either as a present or prospective co-tenant of the remainder, and as a present tenant of his mother, to build the improvements upon the common property at his own risk. As between him and his mother he would have the right to remove the improvements as belonging to him. Nor would such right be any less as between him and his co-tenant provided that the building and the removal were not injurious to her or to the land. If it appear in a partition case that one of the co-tenants has in good faith built beneficial improvements upon the common property, that fact will receive the consideration of the court as an existing equity. A protection thereto will be afforded in the decree as far as it can be done without prejudice to the other co-tenant. This is a general principle of equity which has been frequently applied in this court as will presently appear by later citations herein. One recognized method of protection is to include the improvements in that portion of the common estate awarded by decree to such co-tenant. If it appears impracticable to divide the property in kind, the equity of such co-tenant may be protected by alternative remedy. His legal right to remove the improvements in so far as it can be done without substantial injury to the premises, will be recognized. The exercise of this remedy would necessarily involve loss and waste to the owner of the improvement without working any corresponding benefit or advantage to the other co-tenant. The usual equitable alternative in such a case is to order the property sold as a whole including the existing improvements and to award to the owner of the improvements out of the sale price, their fair contribution thereto. In this case the court found the present worth of the improvements to be considerably in excess of $5000 and found further that such improvements would add not less than $5000 to the sale price of the property. Upon such finding it was ordered in the decree that $5000 of the sale price should first be paid to Pratt for his improvements. * * *

"In view of the foregoing, it is needless that we decide the issue of fact between the parties, which is much stressed in argument, as to whether Mrs. Nelson had notice beforehand, or consented afterwards, of or to, the making of such proposed improvements. If they added $5000 to the selling value of the farm, she suffered no prejudice from their building and none from their inclusion in the sale. There is no dispute in the evidence as to their present value."

In a supplemental opinion in Nelson v. Pratt, supra, on rehearing, the court adhered in full to the original opinion, and answered the contention of the petitioner that the opinion in Booth v. Booth, supra, 114 Iowa 78, 86 N. W. 51, had been ignored. The court clearly distinguished that case and pointed out that there was no conflict in the two decisions. The court said, at page 447 of 212 Iowa, page 386 of 236 N. W.:

"Giving to the opinion in the Booth case, the most favorable construction contended for by appellant, its only effect would be to require us to discuss the disputed evidence in the case at bar. In the original opinion we found it unnecessary to determine the dispute of fact as between the parties herein."

The court then reviewed the testimony in the Booth case and found that the plaintiff had full knowledge of the construction of the improvements by the defendant, and never raised any question until many months after her mother's death. The court further found that defendant made the improvements in reliance upon his interest as remainderman, and that the plaintiff so understood. The mother had disclaimed all interest in the improvements and they were deemed to be the absolute property of the defendant.

The supplemental opinion was in no way a recession from the original opinion. The court expressly stated that it adhered thereto in full. What the court said about the disputed fact as to whether the plaintiff had knowledge of or had consented to the improvements was simply in answer to the petitioner's contention and an assertion that she was in error as to the facts as well as to the law.

We have reviewed our past decisions bearing upon this

appeal, because appellant has discussed many of them, and has contended at length and strenuously that the decision of the trial court is not sustained by, but is contrary to, those decisions. She has argued that she knew nothing about the later improvements on the premises, and that since she never authorized them she is entitled to one half their value. It was in support of that position that it was insisted by her that the court, in the supplemental opinion in Nelson v. Pratt, had receded from its holding in the main opinion that it was not material to the defendants' recovery whether the plaintiff knew and consented to or had not known and had not consented to the making of the improvements. The decision of the court in the original opinion was right and was not departed from in the supplemental opinion. Any other decision would have been contrary to the holding in Killmer v. Wuchner, supra, 79 Iowa 722, 45 N. W. 299, 8 L. R. A. 289, 18 Am. St. Rep. 392, and we re-affirm the decision.

Appellant also argues that the court, in Van Veen v. Van Veen, 213 Iowa 323, 236 N. W. 1, 238 N. W. 718, in its holding that the widow was not entitled to any reimbursement for the tiling of the land, was contrary to the decision of the trial court in the case before us, and was a departure from the holding in Nelson v. Pratt and Killmer v. Wuchner, both supra, that reimbursement in partition suits for improvements was allowable. We do not agree with this contention of appellant. The matter was not discussed much in the opinion. The trial court had allowed the widow nothing on her claim for tiling or for repairs. This court modified the trial court's decree by allowing the widow for the repairs. Further along in the opinion is this isolated sentence, on page 337 of 213 Iowa, page 7 of 236 N. W.: "We feel that the court was right in not allowing the widow anything on her claim for the tiling of the land." Nothing is said about the testimony, or the lack of it, concerning the tiling. No reason is given why nothing was allowed. The facts probably were that there was no proof of the amount spent for tiling, and no testimony respecting any increase in the value of the farm because of the tiling. The purpose of tiling is to benefit the land and make it more pro-

ductive. It ordinarily does so and thereby increases the value of the land. If the circumstances are such that a cotenant is entitled to an allowance in a partition suit for improvements made by him, tiling should not be excluded therefrom. Tiling should be included, just as a house, barn, fencing, or any other proper improvement, in determining the enhanced value of the property. In Clarke v. Clarke, supra, 349 Ill. 642, 650, 183 N. E. 13, 16, the court allowed compensation for buildings, fencing, and "456 rods of tile." We will assume that the reason the claim for tiling in the Van Veen case was not allowed was because of the facts and not because of any doubt of the law. We hold that the Van Veen decision in no way modifies or overrules in any way the decisions in Killmer v. Wuchner or Nelson v. Pratt, both supra. For an instructive discussion of the authorities in Iowa and elsewhere on contribution for improvements in cotenancy, see 29 Iowa L. Rev. 577 et seq.

II. Appellant argues that appellee evicted and ousted her from the home, and that he was therefore a disseisor, and under the decisions in Austin v. Barrett, 44 Iowa 488, Dodge v. Davis, 85 Iowa 77, 52 N. W. 2, Todd v. Stewart, 199 Iowa 821, 827, 202 N. W. 844, and like cases, he would not be entitled to recover for improvements. This contention is without merit. The evidence clearly shows that she moved out of her home with her household goods voluntarily, as she knew she would when she concluded not to contest the divorce. The appellee remained there with her assent. In Barrett v. Love, 48 Iowa 103, 111, it is said that disseisin occurs only when an entry is made upon lands, and possession taken unlawfully and without assent. The appellee was lawfully in the home before the divorce and his possession thereafter was lawful. He was not a disseisor.

III. Although the trial court found that the improvements put on the premises by appellee enhanced their value $8,050, since the appellee in his pleadings claimed credit for an enhancement of but $8,000, the court found that but one half thereof, or $4,000, could be allowed as a charge for the improvements against the interest or share of the appellant in the property. The court so decreed. This leaves a balance of $250 in the proceeds of the sale. The evidence without dispute estab-

lishes that the unimproved lot was at all times worth $150. Of this sum each party is entitled to one half, or $75. The evidence was that the rental value of the unimproved lot was about $8 an acre a year. There was evidence that the rental value of the property as improved was $40 a month, but appellant would be entitled to rent only on the lot as unimproved.

Appellee occupied the premises after the divorce and prior to the entry of decree herein, a little over twenty-four months. Appellant would be entitled to one half the monthly rental, or $4 a month, or approximately $100.

Appellant's motion to strike the reply brief and argument of cross-appellant is denied.

All matters presented have been considered and it is our judgment that the decree of the district court should be, and it is, affirmed on each appeal.—Affirmed.

OLIVER, C. J., and SMITH, MANTZ, HALE, GARFIELD, MULRONEY, and HAYS, JJ., concur.